**Michele S. LACHMAN, Plaintiff,**

v.

**BANK OF LOUISIANA IN NEW ORLEANS et al., Defendants.**

No. C80–1776.

United States District Court,
N. D. Ohio, E. D.

March 20, 1981.

---

Roy E. Lachman, Cleveland, Ohio, for plaintiff.

Sidney M. Bach, Bach & Wasserman, New Orleans, La., for defendant Bank of Louisiana.

Edmond G. Mirranne, Mirranne & Mirranne, New Orleans, La., Robert G. McCreary, Jr., Arter & Hadden, Cleveland, Ohio, for defendant Security Homestead Association.

David G. Heiman, Cleveland, Ohio, Edmund J. Adams, Frost & Jacobs, Cincinnati, Ohio, for defendant VISA, U.S.A., Inc.

## MEMORANDUM and ORDER

BEN C. GREEN, Senior District Judge:

This is an action brought by plaintiff Michele Lachman against defendants Bank of Louisiana in New Orleans, the Security Homestead Association, the Southern States Bankcard Association, and VISA, U.S.A., Inc.

The complaint alleges violations of the Fair Credit Billing Act, 15 U.S.C. §§ 1666 *et seq.* and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, along with common law tort claims for international infliction of emotional distress and invasion of privacy. Jurisdiction is alleged pursuant to 15 U.S.C. §§ 1640(e), 1692k on the statutory claims and pursuant to 28 U.S.C. § 1332 (diversity of citizenship) on the tort claims.

Defendants VISA, Bank of Louisiana, and Security Homestead Association have moved, pursuant to Rule 12(b), Federal Rules of Civil Procedure, to quash service and dismiss the complaint against them for lack of personal jurisdiction. Alternatively, Bank of Louisiana and Security Homestead seek dismissal for lack of venue or transfer of venue pursuant to 28 U.S.C. § 1404(a) (*forum non conveniens*) to the Eastern District of Louisiana.

From plaintiff's affidavit, and from documents the authenticity of which has not been denied, it appears that while a resident of Louisiana in 1978, Mrs. Lachman applied for and received a VISA charge card from defendants Bank of Louisiana and Security Homestead. In August, 1979, Mrs. Lachman moved to her present home in Shaker Heights, Ohio, notifying defendant Southern Bankcard of her change of address.

Mrs. Lachman and her husband used the VISA cards to make purchases while in Louisiana, and made payments therefor to Southern Bankcard, the latter apparently acting as collection agent for Bank of Louisiana and Security Homestead.

After they moved to Ohio, plaintiff and her husband continued to use the cards to make purchases. In September, 1979, they were billed for $143.74 for purchases made in Ohio and paid that amount to Southern Bankcard. In October, 1979, Southern Bankcard billed them $426.94 for charges made in Ohio and that amount was paid.

On October 10, 1979, Mrs. Lachman's VISA card was stolen. She immediately notified Southern Bankcard of the theft, a notification acknowledged by Southern Bankcard by way of a letter dated October 19, 1979.

By the latter date, however, the account balance was $1,431.72, an amount which plaintiff alleges is substantially due to unauthorized use of the card. The letter from Southern Bankcard requested prompt notification of "questionable charges." On October 24, plaintiff notified Southern Bankcard that the balance "greatly exceeds our purchases" and requested copies of the charge slips so that she could verify those which were authentic.

On November 5, 1979, Southern Bankcard sent plaintiff a statement of account showing a balance of $1,431.72. The statement was not itemized, a factor brought to Southern Bankcard's attention by a letter from plaintiff dated November 15. The letter recited that the entire amount was disputed.

Thereafter, numerous statements, letters, and some documentation were exchanged by the parties. These exchanges, plaintiff complains, were not in conformity with the Fair Credit Billing Act.

Further, plaintiff complains, the defendants attempted to collect the disputed amounts from her in a manner which violated the Fair Debt Collection Practices Act. These attempts at collection, plaintiff complains, coupled with the violations of the Fair Credit Billing Act, were of such a nature as to give rise to the tort claims. Mrs. Lachman seeks statutory, compensatory, and punitive damages, plus attorneys' fees.

In their motions to dismiss, the moving defendants claim they have insufficient contacts with the State of Ohio to allow this Court to assert *in personam* jurisdiction

over them. All claim that they are not licensed or incorporated in Ohio, maintain neither offices nor agents for service of process in Ohio, and that they do not do business in Ohio. Therefore, defendants assert, the claims against them must be dismissed.

■ The parties agree that the law to be applied in determining whether jurisdiction may be asserted and process was adequate is the law of Ohio. Rule 4(f), Federal Rules of Civil Procedure, *In-Flight Devices v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (C.A. 6, 1972).

The parties further agree that personal jurisdiction over a non-resident defendant, or "long-arm" jurisdiction, is governed by Section 2307.382, Ohio Revised Code, which reads, in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in the state;

\*    \*    \*    \*    \*    \*

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; ....

■ Section 2307.382 was enacted by the Ohio General Assembly to extend the "long-arm" jurisdiction of the courts in the state as far as the due process clause of the Fourteenth Amendment will allow. *In-Flight Devices Corp. v. Van Dusen Air, Inc., supra.*

The due process limitation, however:

... requires ... that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notices of fair play and substantial justice." *International Shoe Co. v. Wash-*

*ington*, 326 U.S. 310, 316, [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945).

In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Court limited the *International Shoe* doctrine, requiring that a defendant must have "purposely avail[ed] itself of the privilege of conducting activities within the forum State ..." if long-arm jurisdiction is to be exercised over him.

These principles have been recently reaffirmed in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), where the Court noted, at 444 U.S. 297, 100 S.Ct. 567:

When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," [citing *Hanson*], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.

The foregoing rules, the Supreme Court said:

... give a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

The Supreme Court has confined its statements in the area of long-arm jurisdiction to broad principles, heavily founded in equity and determinations of "fairness" and "reasonableness." It noted in *World-Wide Volkswagen* at 444 U.S. at 292, 100 S.Ct. at 564:

Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum state's interest in adjudicating the dispute ...; the plaintiff's interest in obtaining convenience and effective relief ..., at least where that interest is not adequately pro-

tected by the plaintiff's power to choose the forum, . . .; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies.

Other than the above, the Supreme Court has not set forth specific guidelines which could be mechanically applied to a given fact situation to arrive at a simple result.

The Sixth Circuit did set forth such guidelines in *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (C.A.6, 1978). The parties have devoted much of their advocacy on this issue to application of the *Southern Machine* and other mechanical tests.

But the Sixth Circuit made plain in *Welsh v. Gibbs,* 631 F.2d 436 at 440 (1980):

> Though *Southern Machine* provides a framework of analysis, it cannot be mechanically applied. A case does not automatically warrant dismissal because its facts do not fit the pattern of . . . one of our other decisions. . . . "The existence or nonexistence of the necessary 'minimum contacts' to justify the upholding of personal jurisdiction over foreign corporations under the Fourteenth Amendment as interpreted in the International Shoe Company case must obviously be worked out with reference to the facts of a particular case rather than in a statement of dogmatic rules of all-inclusive principles."

■ The burden of establishing *in personam* jurisdiction rests with the party claiming jurisdiction, i. e., the plaintiff. *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (C.A.6, 1974). Where the issue is to be decided on briefs and affidavits, the plaintiff is required to make out a prima facie case of jurisdiction, that is, he need only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Welsh v. Gibbs, supra,* citing *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (C.A.9, 1977).

■ Jurisdiction is to be determined by examining the conduct of the defendant as of the time of service of the complaint. The Court does not look to whether the defendant had minimum contacts with the state at the time of the act complained of; rather, the Court looks to whether it could assert personal jurisdiction over the defendant at the time jurisdiction is sought to be asserted. *Lantsberry v. Tilley Lamp Co.,* 27 Ohio St.2d 303, 272 N.E.2d 127 (1971).

In *World-Wide Volkswagen Co., supra,* the Supreme Court declined to permit the courts of Oklahoma to assert jurisdiction over several defendants merely because an automobile sold by defendants in New York was involved in an accident in Oklahoma. That case involved a "fortuitous" link between the defendant and the state—one which the defendants had neither notice of nor ability to control.

Such is not the case here, where plaintiff notified the banking defendants (Bank of Louisiana and Security Homestead) that she had left Louisiana and had taken up residence in Ohio. Thereafter, the banking defendants permitted plaintiff to use the charge cards in Ohio, thereby extending credit to her in this state. They billed her at her Ohio address for purchases made in Ohio. Only when the card was stolen did the banking defendants make the decision to discontinue their business relationship with plaintiff; to sever their ties with Ohio.

This "conduct and connection with the forum state are such that [the banking defendants] should reasonably anticipate being haled into court here," 444 U.S. at 297, 100 S.Ct. at 567. Had the banking defendants not desired to be subject to suits in this state, they should have structured their conduct to achieve that result by declining to extend credit to any resident of Ohio, including plaintiff.

While this case does not involve "efforts of the [banking defendants] to serve . . . the market for [their services] in other states," 444 U.S. at 297, 100 S.Ct. at 567, it surely is not one involving "unilateral activity of [plaintiff] who claim[s] some relationship with the nonresident defendant."

*Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239.

Further, the other factors set forth by the Supreme Court in *World-Wide Volkswagen Co.* at 444 U.S. 292, 100 S.Ct. 564 weigh in favor of asserting personal jurisdiction.

It seems plain that the burden on the banking defendants of defending themselves in Ohio—"always a primary concern" —is not so great so as to be controlling. Bank of Louisiana and Security Homestead have already retained local counsel and have been given leave of court to have their Louisiana law firms represent them in this case.

While the State of Ohio has manifested no direct interest in adjudicating the federal statutory claims, Ohio has, by way of § 2307.382 of its Revised Code made clear that it intends to extend the personal jurisdiction of its courts to the furthest extent permitted by the due process clause, particularly in regards to tort claims. The State of Ohio has thus expressed the same interest manifested by the State of California in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1959), i. e., to protect its citizens from the unlawful conduct of persons or corporations in other states. *See, Kliner v. Weirton Steel Co.*, 381 F.Supp. 275, 277 (D.C.Ohio, 1974).

The "plaintiff's interest in obtaining convenient and effective relief" in this case weighs strongly in favor of asserting jurisdiction. Congress intended, by way of the acts invoked here, to provide consumers with effective remedies for the stated unfair practices enumerated in the acts. 15 U.S.C. § 1601. This purpose would be frustrated if consumers had to travel long distances to file and prosecute lawsuits against banks and credit card issuers, particularly in light of the limited liability established by the acts. 15 U.S.C. §§ 1666(b), 1692k(a)(2)(A). *See McGee*, at 355 U.S. 223, 78 S.Ct. 201.

The "interstate judicial system's interest in obtaining the most efficient resolution of controversies" would not be affected by the assertion of jurisdiction in this case, and thus this factor does not weigh in favor of, or against, the motions to dismiss.

Finally, from the discussion above regarding the remedial nature of the legislation sought to be enforced here, as well as the fundamental nature of tort law, it appears that "the shared interest of the several states in furthering fundamental social policies" weighs in favor of asserting jurisdiction.

■ Therefore, this Court holds that where, as here, a credit card issuer which knows that one of its cardholders has moved to another state, allows that cardholder to make purchases in the latter state with the card, then bills the cardholder at her new address for such purchases, the issuer has sufficient minimum contacts with the latter state to permit the assertion of personal jurisdiction by the courts of that state in disputes arising from that contact.

The motions of Bank of Louisiana and Security Homestead to dismiss for lack of personal jurisdiction are therefore denied.

VISA, U.S.A. (hereinafter "VISA") has also moved to dismiss, or, alternatively to quash service of process on the same grounds as the banking defendants, i. e., that it has insufficient minimum contacts with the State of Ohio to allow this Court to assert personal jurisdiction over it.

Plaintiff responds by alleging that the banking defendants were the agents of VISA by way of estoppel or otherwise, and that VISA is therefore liable under standard principles of agency law for the wrongful acts of such agents.

In support of her response, plaintiff says by way of affidavit that VISA allows the banking defendants to use VISA's name when doing business with her and other customers, and that VISA's name and trademark were plainly marked on the credit card issued her and on the billing statements and stationery used by the banking defendants. She states by way of affidavit that she always believed the banking defendants to be authorized to use

VISA's name and reputation in their dealings with her, and that they were dealing with her as agents of VISA. She disclaims in the affidavits any knowledge prior to the initiation of this action of any agreement between VISA and the banking defendants which was inconsistent with the above beliefs. And plaintiff claims in her affidavit that VISA's advertising on national television and other media have led her to believe that it was transacting business with the public throughout the United States, directly and through its agents. She claims that VISA's "apparent national presence was a principal reason for my willingness to receive and use a VISA card."

VISA responds by asserting that:

It is apparent that the plaintiff does not know or understand what VISA is. VISA is a membership corporation which takes and approves applications for membership from various financial institutions, including banks, savings and loan associations, and credit unions. ... VISA requires members to abide by certain trademark specifications and follow certain procedures for international systems continuity of operations. ... VISA does not issue credit cards, provide services to cardholders or deal with cardholders or the public in any way. ... Only member banks and other financial institutions issue credit cards, establish finance charges, set credit standards, approve cardholders, maintain account records, send billing statements, make collections and deal with cardholders. ... VISA neither has nor exercises any control over member banks or financial institutions regarding the foregoing activities.

VISA also says, by way of affidavit of its general counsel, that the corporation engages in national and regional advertising "to promote public awareness and acceptance of VISA services."

■ As noted before, the law of Ohio is to be applied in determining questions relating to the existence or lack of minimum contacts with the state. Ohio recognizes the doctrine of agency by estoppel, or apparent agency. See 3 O.Jur.3d 88, et seq.,

Agency, §§ 55, et seq., and authority cited therein.

In *Agosto v. Leisure World Travel, Inc.,* 36 Ohio App.2d 213, 304 N.E.2d 910 (1973), the court said:

[The doctrine of agency of estoppel] is particularly applicable where one by license permits another to use his business or trade name. Obviously, the value of the use of the business or trade name is founded upon the reliance of the public upon the business or trade name, and the advertising promoting the product or service bearing the trade name. When a business or trade name is so used, the public is entitled to assume that transactions they undertake with one using that trade or business name, with authorization to do so, are transactions of the person whose business or trade name is being used.

■ VISA does not deny that the banking defendants were authorized by it to use its name and trademark in their activities; by way of affidavit, VISA's general counsel refers to defendant Bank of Louisiana as a "member bank."

VISA asserts that it has not authorized any bank, member or otherwise, to use its formal name, "VISA, U.S.A.," but rather only the trademark, "VISA," and that therefore the agency by estoppel doctrine cannot be applied to it. This argument is spurious. The Court finds that the disimilarities between the corporate name "VISA, U.S.A." and the trade name "VISA" are so minimal as to be a distinction without any real difference.

It is not necessary at this time to make a final determination as to whether VISA is estopped to deny the agency of the banking defendants. Plaintiff bears the burden now of only making out a *prima facie* case; of demonstrating "facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Welsh v. Gibbs, supra.*

■ Plaintiff has met that burden by showing facts which establish a prima facie

case of agency by estoppel.[1] Assuming for the determination of the motion to dismiss that the banking defendants were VISA's agents, it follows that the minimum contacts with Ohio of the agent were also minimum contacts of the principal. *International Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Since the banking defendants have been determined to have sufficient minimum contacts with the state to support a finding of personal jurisdiction over them, there exist sufficient minimum contacts to assert personal jurisdiction over VISA.

VISA's motion to dismiss or to quash service is, therefore, denied.

■ The banking defendants have moved, alternatively, to dismiss for lack of venue. The Court finds that venue is proper in the Northern District of Ohio, as the claims "arose" here. 28 U.S.C. § 1391(a).

■ It is well established that the *situs* of a tort-type cause of action is the location

the injury is suffered.[2] *Richards v. United States*, 369 U.S. 1, 11, n. 24, 82 S.Ct. 585, 591, n. 24, 7 L.Ed.2d 492 (1962) ("rule has been stated so frequently that a citation of cases here would serve no purpose."); *Kroger Co. v. Adkins*, 284 F.Supp. 371 (M.D. Tenn., 1968); *aff'd sub nom. Kroger Co. v. Dornbos*, 408 F.2d 813 (C.A.6, 1969).

The statutory causes of action, involving as they do the alleged breaches of a legal duty, are closely analogous to a common law tort, and thus tort principles should apply in determining where the statutory claims "arose." It would appear that any loss as a result of either of plaintiff's statutory or tort claims would have been suffered in the Northern District of Ohio. Thus the claims "arose" here.

The banking defendants have also moved that venue be changed to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a). The statute reads:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil ac-

---

1. VISA also urges that *Oberlin v. Marlin American Corp.*, 596 F.2d 1322 (C.A.7, 1979) and *Logsdon v. ABCO Construction Co.*, 103 Ohio App. 233, 141 N.E.2d 216 (1956), require a contrary finding.

*Oberlin v. Marlin American Corp.*, held only, at 596 F.2d 1327, that the Lanham Act, 15 U.S.C. §§ 1051, 1055, *did not*, of itself "automatically saddle the licensor [of a trademark] with the responsibilities under state law of a principal for his agent." An independent state law determination of agency by estoppel or otherwise was not precluded by the decision.

*Logsdon v. ABCO Construction Co., supra*, merely repeated the familiar holding that it is the activities of the principal, and not the agent, which create the equitable situation in which the principal is estopped to deny the agency relationship. This holding is wholly consistent with the principle set forth in *Agosto v. Leisure World Travel, supra*, that where an actor allows another to appear to be his agent by authorizing use of a trademark or trade name, he will be estopped to deny the agency with respect to third persons who deal with the apparent agent in good faith and in the exercise of reasonable prudence.

Neither decision requires a decision contrary to that reached here.

2. Plaintiff urges the rule that the *situs* of the claims is the location where the last act necessary to constitute the cause of action took place. Although there is much authority to support that position, e. g. *Delta Tank Mfg. Co. v. Weatherhead Co.*, 150 F.Supp. 525 (N.D. Ohio, 1959), *aff'd* 254 F.2d 602 (C.A.6, 1958); *Cesnik v. Chrysler Corp.*, 490 F.Supp. 859 (M.D.Tenn., 1980), the American Law Institute no longer considers the point so well established as to be a part of its restatement. Compare *Restatement, Conflict of Laws*, § 377 (1934) with *Restatement, Conflict of Laws 2d*, §§ 145, 149 (1971). And see *Sack v. Low*, 478 F.2d 360, 366 (C.A.2, 1973); 16 *Am.Jur.2d* 167, Conflict of Laws, § 100, nn. 75, 76, and authority cited therein.

It appears, however, that the "last act" rule continues to have more vitality than its critics are willing to give it. The "last element" of a tort cause of action is generally the sufferance of damages. *Sack v. Low, supra*, at 365 ("a tort action traditionally has not been viewed as complete until the plaintiff suffers injury or loss"); *Cesnik v. Chrysler Corp., supra*, at 859 ("last event necessary in this tort is constriction of plaintiff's opportunities").

Viewed in that light, the "last act" in a tort-type cause of action, the "last element" to the tort, is the sufferance of damages. Thus, the "location of injury" rule and the "last act" rule have been merged. The "location of injury" rule, the simpler and more clearly stated concept, has predominated.

 

tion to any other district or division where it might have been brought.

 Defendants bear the burden of showing why the forum should be changed. *Leinberger v. Webster,* 66 F.R.D. 28, 34 (E.D.N.Y., 1975); *Plum Tree v. Stockment,* 488 F.2d 754, 756 (C.A.3, 1973). Defendants "moving for transfer must show that the original forum is inconvenient for it and that plaintiff would not be substantially inconvenienced by a transfer." Wright and Miller, *Federal Courts,* § 3848, at p. 259. A mere preference for another forum, or a shift of the inconvenience from one party to another is insufficient to warrant a transfer under the statute. *Sohns v. Dahl,* 392 F.Supp. 1208, 1217 (W.D.Va., 1975); *Quinn v. Bowmar Publ. Co.,* 445 F.Supp. 780, 787–8 (D.Md., 1978). The balance must be strongly in the defendant's favor before a transfer will be ordered. *Quinn, supra; Star Lines, Ltd. v. Puerto Rico Maritime Shipping Authority,* 442 F.Supp. 1201, 1207 (S.D.N.Y., 1978).

Except for vague and conclusory allegations of inconvenience, defendants have made no showing sufficient to tip the balance in their favor.

> In making a motion for a change of venue, the [movant] has the burden of making a clear showing that the factors militate in favor of transferring the case, . . .
>
> In attempting to meet this burden, a movant must provide precise information, in affidavit form, about the witnesses he intends to call and the anticipated areas of their testimony, so that the court can intelligently weigh the factor of witness convenience. *Car Freshner Corp. v. Auto Aid Mfg. Co.,* 438 F.Supp. 82, 85 (N.D. N.Y., 1977).

This Court finds that the banking defendants have failed to meet their burden of showing why a change of venue is warranted, and why plaintiff's choice of forum should be disturbed. The motions for change of venue are denied.

In summary, the motions by Bank of Louisiana and Security Homestead Association to dismiss for lack of personal jurisdiction are denied. The motions by Bank of Louisiana and Security Homestead to dismiss for lack of venue, or alternatively for change of venue, are denied. The motion of VISA, U.S.A. to dismiss for lack of personal jurisdiction is denied.

Defendants may answer or plead within 14 days of entry of this memorandum and order.

IT IS SO ORDERED.