**Hurston MURPHY, Plaintiff,**

**v.**

**ALLEN COUNTY CLAIMS & ADJUSTMENTS, INC., et al., Defendants.**

**No. C–1–82–284.**

United States District Court, S.D. Ohio, W.D.

Oct. 29, 1982.

John Bower, Southeastern Legal Services, Portsmouth, Ohio, for plaintiff.

Gene Mesh, Cincinnati, Ohio, for defendants; Harland M. Britz, Britz & Zemmelman, Toledo, Ohio, of counsel.

OPINION AND ORDER

DAVID S. PORTER, Senior District Judge.

I

Plaintiff, Hurston Murphy, brought suit against defendants, Allen County Claim & Adjustments [ACCA], Inc. and David Crotinger, manager of ACCA, under the Fair Debt Collection Practices Act [the FDCPA], 15 U.S.C. § 1692 et seq., on March 11, 1982. Plaintiff alleges that he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3),

Complaint ¶ 3, and that defendants are "debt collectors" within the meaning of 15 U.S.C. § 1692a(4). Complaint ¶ 4. Defendants allegedly made several communications by mail to plaintiff which violate the FDCPA. Complaint ¶ 6.

On March 30, 1982, defendants moved to dismiss the action for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, to transfer venue to the Northern District of Ohio, Western Division, under 28 U.S.C. § 1404. We deny both motions, the latter without prejudice.

Plaintiff stated in his complaint at ¶ 2 that his claim is venued appropriately pursuant to 28 U.S.C. § 1692(b). Section 1692 of Title 28 concerns "Process and orders affecting property in different districts," and is clearly inapposite. There is no subsection (b). Defendant rightly argues that we must look to the general venue statute, 28 U.S.C. § 1391, to determine whether plaintiff's choice of venue in the Southern District of Ohio is appropriate.

Subsection (b) provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship, may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

28 U.S.C. § 1391(b). Both of the defendants reside in the Northern District of Ohio; therefore, the Southern District is appropriate only if "the claim arose" there.

The defendants reside and do business in Lima, Ohio within the Northern District of Ohio. Defendants assert that "it may be assumed for purposes of this motion that the mailings [alleged to be in violation of the FDCPA] were made at Lima, Ohio. Memorandum in Support of Defendants' Motion at 2. Plaintiff claims that the mailings were sent to him in the Southern District of Ohio, where he presently resides. Memorandum in Opposition to Defendants' Motion to Dismiss or Change Venue at 1. Defendants correctly state:

The question therefore comes down to a determination of whether the claim arose in the Northern District of Ohio where the mailings were made or in the Southern District of Ohio, where the mailings were received.

Memorandum in Support of Defendants' Motion at 3.

## II

Prior to 1966, venue was proper in federal question cases only in the district where all of the defendants resided. 28 U.S.C. § 1391(b). In 1966, subsection (b) was amended to extend venue to a district "in which the claim arose." Unfortunately, Congress did not supply any definition of the language "in which the claim arose," either in statutory text or in pertinent legislative history, and no black-letter rule is derivable from other legal contexts in which the phrase is used. See *Lamont v. Haig,* 590 F.2d 1124, 1132–33 (D.C.Cir.1978); 1 J. Moore, Federal Practice ¶ 0.142 [5.–2] at 1427–28.

The courts have adopted several different approaches for determining where a claim arose within the meaning of Section 1391(b). *See* Note, *Federal Venue: Locating the Place Where the Claim Arose,* 54 Tex.L.Rev. 392 (1976). One of the more widely used tests focuses on where the "contacts" weigh most heavily. This test was established in *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252 (E.D. Pa.1968). However, as the court phrased the so-called "weight of contacts" test, it is not clear whether it thought that only one district would exist in which the contacts weighed most heavily, or whether venue could lie in more than one district. The courts that have followed *Philadelphia Housing* have reflected this ambiguity. *See,* Note, 54 Tex.L.Rev. 392, 403–04. Moreover, the cases purporting to apply this test have not illuminated how the contacts are to be weighed or when they are significant. *See* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 36 (1976).

An alternative test confers venue in a district where a substantial portion of the

acts or omissions giving rise to the actions occurred, notwithstanding that venue might also lie in other districts. This approach has been urged by the American Law Institute. ALI Study of the Division of Jurisdiction Between the State and Federal Courts §§ 1303, 1314 (1969). This "substantial part" test was endorsed by the Court of Appeals for the District of Columbia in *Lamont v. Haig,* 590 F.2d 1124 (D.C.Cir. 1978). That court looked to the legislative history of the 1966 amendment to Section 1391(b) and noted:

> The legislative concern was pragmatic. Since the place where the claim arose is the situs of events important to the case, Congress undertook 'to facilitate the administration of justice' by permitting suit in a district where the litigation might more handily progress.

590 F.2d at 1133–34, *quoting* Letter from Ramsey Clark, Deputy Attorney General, to Emanuel Celler, Chairman, Committee on the Judiciary, House of Representatives (Nov. 5, 1965), attached to and made part of S.Rep. No. 1752, 89th Cong., 2d Sess. 1–2 (1966), U.S.Code Cong. & Admin.News 1966, 3693.

Accordingly, the D.C. Circuit in *Lamont* determined that where "the claim arose" should "be ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records." 590 F.2d at 1134. The court noted that "the forum court should not oppose the plaintiff's choice of venue if the activities that transpired in the forum district were *not insubstantial* in relation to the totality of events giving rise to the plaintiff's grievance and if the forum is generally convenient for all litigants." *Id.* at 1134 n. 62. (Emphasis added.)

A third approach for determining where the claim arose is to look to the place of injury. This test has been applied most frequently in tort actions; however, it has also been applied in the antitrust area. Note, 54 Tex.L.Rev. 392, 407.

The Supreme Court in *Leroy v. Great Western United Corp.,* 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979) acknowledged that

> in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.[1]

The Sixth Circuit has not adopted a test for locating where the claim arose under Section 1391(b). Nor has it offered us any guidance in interpreting the Supreme Court's dicta in *Leroy* as to what circumstances may give rise to proper venue in more than one district.

### III

Plaintiff contends that the "place of injury" test is applicable here. He cites two cases in which the courts have considered the issue of where a claim under the FDCPA arises, *viz. Gachette v. Tri-City Adjustment Bureau,* 519 F.Supp. 311 (N.D. Ga.1981) and *Lachman v. Bank of Louisiana in New Orleans,* 510 F.Supp. 753 (N.D.Ohio 1981). Like this case, both of those cases involved communications alleged to be violative of the FDPCA by a debt collector located in one judicial district to a consumer located in another district. Both courts held that the claims arose where the injury to the plaintiff occurred, *i.e.,* where the communications were received.

> Venue was established where the defendants reside or "a place which may be more convenient to the litigants"—*i.e., both of them* —"or to the witnesses who are to testify in the case." S.Rep. No. 1752, 89th Cong., 2d Sess. 3 (1966).

---

1. The Supreme Court, however, found that the acts in *Leroy* were not unusual and that the claim had only one obvious locus.

   We also note that this dicta seems to conflict with the statement in a Senate Report made after the 1966 amendment to Section 1391.

Defendants contend that *Lachman* "is of no assistance to the case at bar" because "jurisdiction was founded on diversity of citizenship, and therefore 29 U.S.C. § 1391(a), and not § 1391(b) was applicable." Reply Memorandum in Support of Motion to Dismiss or Change Venue at 1. We believe, however, that the *Lachman* court's reasoning deserves our consideration because it concerns the construction of the language "in which the claim arose."[2] Judge Green wrote:

> The statutory causes of action, involving as they do the alleged breaches of a legal duty, are closely analogous to a common law tort, and thus tort principles apply in determining where the statutory claims 'arose.' It would appear that any loss as a result of either of plaintiff's statutory or tort claims would have been suffered in the Northern District of Ohio. Thus the claims 'arose' there.[3]

In *Gachette,* the district court determined that 28 U.S.C. § 1391(b) was the applicable venue provision. The court then noted that the events having operative significance were the phone calls made by defendants in Virginia to plaintiff and others in Georgia. "The phone calls, allegedly in violation of the [FDCPA] Act, were initiated in Virginia; they were completed in Georgia, and the harm occurred here [in Georgia]." 519 F.Supp. 311, 313. The court conceded that "Virginia would also be a proper forum." *Id.* at 314. However, the court concluded:

> [I]t appears to the Court that discovery in this case will not be particularly extensive, ... and since transfer of the case to Virginia would inconvenience plaintiff at least as much as defendants are presently inconvenienced, the Fifth Circuit's admonition not to oppose plaintiff's choice of venue 'if the activities that transpired in

the district where suit is brought were not insubstantial and the forum is a convenient one balancing the equities and fairness to each party' takes on added weight.

519 F.Supp. at 314, *quoting Florida Nursing Home Administration v. Page,* 616 F.2d 1355, 1361 (5th Cir.1980). The court added, "[t]he remedial purpose of the Act would be defeated if the Court were to take a restrictive view of venue in this instance." 519 F.Supp. at 314.

Defendants contend that the facts in *Gachette* are distinguishable from the facts in this case because "the phone calls giving rise to plaintiff's injury began in the Northern District of Ohio." Defendants argue, "If plaintiff's move to the Southern District is sufficient to establish proper venue there, then venue would be proper in any district in which plaintiff chooses to reside ... [S]uch a result contravenes the legislative purpose in amending § 1391 and has been prohibited by the U.S. Supreme Court in *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)." Reply Memorandum at 3.

We reject defendants' argument, and find that venue is appropriate in this district. Although no facts have as yet been established, defendant concedes that communications were made to plaintiff after he had moved to the Southern District of Ohio. Assuming that such communications did violate the FDCPA, we can conclude that plaintiff suffered an injury in the Southern District. We further conclude, on the basis of this concession, that the activities that transpired in this district were "not insubstantial in relation to the totality of events giving rise to the plain-

---

**2.** Section 1391(a) reads:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or *in which the claim arose.* (emphasis added).

**3.** The plaintiff in *Lachman* was issued a VISA card by defendants while she resided in Louisiana. She subsequently moved to Ohio and

made purchases there with the credit card. She then brought action against the Bank of La. in New Orleans, the Security Homestead Ass'n, the Southern States Bankcard Ass'n, and VISA, U.S.A., Inc., alleging violations of the Fair Credit Billing Act, 15 U.S.C. § 1666 et seq., the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., as well as certain common law torts.

tiff's grievance." *Lamont v. Haig,* 590 F.2d at 1134 n. 62; *see also Florida Nursing Home Administration v. Page,* 616 F.2d 1355, 1361 (5th Cir.1980). We therefore follow the rule applied by the D.C. Circuit in *Lamont* and the Fifth Circuit in *Florida Nursing Home* (followed by the district court in *Gachette*) and will not oppose the plaintiff's choice of venue as long as the chosen district is generally convenient for all.

While the Northern District of Ohio would obviously be more convenient for the defendants than the Southern District since they reside there, it cannot be contended seriously that trial in the Southern District would place an undue hardship on the defendants. Defendants conceded in oral argument that discovery will be limited and that a relatively small number of documents is involved in this case. On the other hand, plaintiff has been permitted to proceed *in forma pauperis* because of his meager financial resources. He contends that transfer, even to the Northern District, would affect adversely his ability to prosecute his claim. Memorandum in Opposition to Defendants' Motion at 5.

Defendants maintain that the Supreme Court's decision in *Leroy* compels dismissal for improper venue in this case. We disagree. *Leroy* concerned an action by a Texas-based corporation against Idaho State officials which the state officials attempted to use to stop the plaintiff corporation's tender offer for shares in an Idaho corporation. The Supreme Court held that "the claim arose" only in the District of Idaho for venue purposes. In essence, the Court, not surprisingly, held that the plaintiff had to go to Idaho to challenge Idaho law.

The *Leroy* Court rejected the court of appeals' reasoning that the "claim arose" in Dallas, Texas because that was where plaintiff proposed to initiate its tender offer and where Idaho's statute had its impact. In so doing, the Court noted that "this reasoning would subject the Idaho officials to suit in almost every district in the country." 443 U.S. at 186, 99 S.Ct. at 2718. The Court was thus concerned about imposing a burden on state officials by forcing them to defend suits by prospective offerees all over the country. A similar concern operates in this case: We do not want to permit the defendant-debt collectors to engage in practices that may violate the FDCPA and harass persons in other districts, and then force such persons to come to the defendants' district to bring action against them. We find that it is consistent with the rationale of *Leroy* to hold that, in this case, venue in plaintiff's district is proper.

Accordingly, we deny defendants' Rule 12(b)(3) motion, Fed.R.Civ.P. 12(b)(3), to dismiss the action for improper venue.

### IV

In the alternative, defendants seek transfer to the Northern District of Ohio pursuant to 28 U.S.C. § 1404. Defendants are currently defending another suit in that district in which other plaintiffs have alleged violations of the FDCPA similar to those alleged in this case. *See Gasser v. Allen County Claims & Adjustment, Inc.,* (No. C80–334) (pending before Judge Don J. Young). Plaintiffs in that case seek certification as a class action, but no order has been entered yet either certifying a class or denying certification.

Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

Defendants assert the following reasons for having *Gasser* and the instant case pend simultaneously in the Northern District:

1. To conduct pre-trial discovery more efficiently.

2. To save witnesses time and money.

3. To avoid duplicitous litigation.

4. To avoid inconsistent judgments.

Memorandum in Support of Defendants' Motion at 5.

In *Lieb v. American Pacific International, Inc.,* 489 F.Supp. 690, 697 (E.D.Pa.1980), the district court stated that, "[I]n deter-

mining the merits of a § 1404(a) motion to transfer, the plaintiff's choice of a proper forum is entitled to 'paramount consideration'." Where convenience and other facts are inconclusive, the pendency of related litigation may be dispositive; however, it does not outweigh facts militating against transfer. *See Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 739 (1st Cir. 1977); 15 C. Wright, *Federal Practice* § 3854 at 287 (1976).

Plaintiff asserts that other factors militate against transfer in this case. He argues that "distance to the forum and the resultant inconvenience to the plaintiff may outweigh the possibility of consolidation."[4] Memorandum in Opposition at 5. He further argues that if this case were transferred and consolidated, he would "be forced to share prosecution with fifteen other plaintiffs in a trial wherein each plaintiff has differing claims to damages." *Id.* In *Bayly Manufacturing Co. v. Koracorp Industries, Inc.*, 298 F.Supp. 600, 603–04 (D.Colo.1969), the district court denied defendants' motion to transfer venue to a district in which similar monopoly and restraint of trade actions were pending because plaintiff would be forced to share prosecution with seven to nine other plaintiffs in a consolidated trial, and a trial could be held sooner without a transfer.

Plaintiff also points out that if *Gasser* is certified as a class action, it would be under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and that under subdivision (c)(2) of the rule, plaintiff would be excluded from the class upon request. Plaintiff argues: "In light of this situation, it is difficult to determine how judicial economy might be served by transfer." Memorandum in Opposition at 5.

Plaintiff further counters defendants' reasons for transfer by stating that he does not contemplate extensive discovery nor inconvenience in discovery attributable to venue in this district.[5] *Id.* at 5–6. He

states, "[t]here is no showing that transfer will [in]convenience witnesses," and "[d]efendants' prospect of being subject[ed] to inconsistent judgments is 'scarcely grave' in light of his right to appeal." *Id., citing New York Central R. Co., v. United States,* 200 F.Supp. 944, 951 (S.D.N.Y.1961).

 We believe that defendants' motion for transfer presents a close question. However, the moving party bears the burden of showing that a balancing of the interests weighs in favor of the transfer. *Lieb,* 489 F.Supp. at 697. We find that defendants have not met this burden, and therefore deny defendants' motion to transfer without prejudice to a renewal of the motion if events militating in favor of transfer should arise.

SO ORDERED.

---

4. The record contains an affidavit by plaintiff which states that his total income as of March 8, 1982 was $424/month with which he supports himself, his wife, and four children.

5. Defendants conceded in oral argument that discovery will be limited.