**GENERAL ENVIRONMENTAL SCIENCE CORP., Plaintiff,**

v.

**Frank L. HORSFALL, et al., Defendants.**

**No. 1:90 CV 1340.**

United States District Court, N.D. Ohio, E.D.

Dec. 12, 1990.

---

**666**

Jerome F. Weiss, Richard L. Stoper, Jr., and Niki Z. Schwartz, Cleveland, Ohio, for plaintiff.

Thomas C. Buford and Jason C. Blackford, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, District Judge.

Before the court is Defendants Biosys Corporation ("Biosys") and Gustavo Gysler's multi-pronged motion to dismiss the instant action, and Defendant Frank L. Horsfall's motion to apply the law of Switzerland. For the reasons stated herein, the motion to dismiss is DENIED, and the motion to apply the law of Switzerland is GRANTED IN PART and DENIED IN PART.

## I. FACTS

On July 27, 1990, Plaintiff, General Environmental Science Corporation ("GES"), filed an eighteen count complaint against Defendants Biosys, Gysler, Horsfall, and John L. Strauss (collectively the "Defendants"). GES is an Ohio corporation engaged in the manufacture, distribution and sale of micro-biological products used for bacterial augmentation in waste water treatment and aqua culture. In essence, the complaint alleges that the defendants carried out a pattern of fraudulent activity with the intent of entering into competition with GES. This fraudulent activity allegedly included the theft and use of GES trade secrets to initiate the manufacture, sale and distribution of products in direct competition with GES products.

According to the complaint, prior to November 22, 1989, both Horsfall and Strauss were under contract with GES. Strauss is a resident of Virginia, and Horsfall is alleged to be a resident of Ohio.

On December 17, 1987, Strauss and GES signed a contract granting Strauss the exclusive right to sell GES products in Europe and the Middle East (the "Strauss Agreement"). By its terms the Strauss Agreement was valid until terminated by one of the parties. In addition, it stated that "[Strauss] must not utilize or pass on to any third person either any trade or business secret of any other confidential information which has become known to him in any way during the period of this AGREEMENT." It also stated that "[Strauss] agrees in particular and explicitly not to represent, market, sell or distribute products other than those manufactured and/or sold by [GES] which are identical or similar to the PRODUCTS; or to participate directly or indirectly in any way whatsoever in any company competitive to [GES]."

On May 19, 1989, GES and Horsfall entered into a contract providing that Horsfall would work as a consultant to GES in the area of micro-biology (the "Horsfall Agreement"). The Horsfall Agreement stated that "[Horsfall] agrees to preserve [GES's] trade secrets, and will not reveal or use any such trade secret for the benefit of himself or a third party without [GES's] written consent." In addition, it stated that "[Horsfall] agrees that while this contract remains in force and for one year thereafter, he will not, for the benefit of himself or another, in any capacity, and without the prior written consent of [GES], engage anywhere in the world in the development, manufacture or marketing of bacterial cultures intended for sale as bacterial augmentation products for use in wastewater treatment or aquaculture in direct competition with products made by [GES]."

On or about November 22, 1989, GES entered into a contract with Biosys, then operating under the name of X–O Corporation (the "X–O Contract"). Biosys is alleged to be a business entity organized under the laws of Switzerland, with its headquarters in Rolle, Switzerland. The X–O Contract provided that X–O would be the exclusive distributor of GES products in Europe. It further provided that Horsfall and Strauss would become employees

of X–O, and that accordingly, they would be released from their contracts with GES. Finally, Section Ten of the X–O Contract stated:

This Agreement shall be governed by the laws of Switzerland and the place of court is Rolle Switzerland in case of claims from [GES]. In the case of claims by [Biosys], this Agreement shall be governed by the laws of the State of Ohio and the federal laws of the United States of America as applied by the United States Federal Courts in the State of Ohio.

Plaintiff's complaint alleges that this contract was part of defendants' fraudulent scheme. Specifically, the complaint alleges that the defendants have violated the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1961 et seq., and committed numerous torts under the laws of the State of Ohio.[1] The complaint does not raise any claims based upon the alleged breach of the X–O Contract.

## II. DEFENDANTS BIOSYS AND GYSLER'S MOTION TO DISMISS

On September 5, 1990, Defendants Biosys and Gysler (referred to collectively as the "Swiss Defendants"),[2] moved to be dismissed from this action for lack of jurisdiction, improper venue, insufficiency of service of process, and forum non conveniens.

### A. Forum Selection Clause

■ The Swiss Defendants claim that Plaintiff is bound by the X–O Contract's forum selection clause, and that, therefore, this suit must be dismissed.

As the Swiss Defendants note, it has long been established that in a diversity suit a federal court must apply the conflict of laws rules prevailing in the state in which it is located. *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Were this a simple contract action, cognizable within the court's diversity jurisdiction, the court would look to Ohio conflict of laws rules to determine whether a choice of forum provision could be enforced.

In the instant case, however, the Plaintiff claims violations of the federal RICO statute, state statutes and state common law. No contractual claims are made and no contract remedies sought. Plaintiff is

---

1. Specifically, the Plaintiff has made the following claims:
   —Counts I—IV are based upon RICO.
   —Counts V and VI allege that Strauss and Horsfall, respectively, violated the Strauss Agreement and the Horsfall Agreement, respectively. Plaintiff claims that since the X–O Agreement was fraudulently entered into, and therefore, a nullity, Strauss and Horsfall remained bound by their prior contracts with the Plaintiff.
   —Count VII alleges that the Defendants violated Ohio Rev.Code Ann. § 1333.51(B) & (C) and Ohio common law by engaging in the conversion of trade secrets.
   —Counts VIII and XI allege that Strauss and Horsfall, respectively, breached the non-compete clauses of the Strauss Agreement and the Horsfall Agreement, respectively.
   —Count X alleges that Biosys and Gysler violated Ohio common law by tortiously interfering with the contractual relationships of GES with Strauss and Horsfall.
   —Count XI alleges that the Defendants violated Ohio Rev.Code Ann. § 2923.32(A)(1) by conducting or participating in, or conspiring to conduct or participate in a pattern of corrupt activity.
   —Count XII alleges that the Defendants violated Ohio Rev.Code Ann. § 2923.32(A)(3) by

knowingly receiving the proceeds derived from a pattern of corrupt activity.
   —Count XIII seeks a temporary restraining order enjoining Strauss and Horsfall from selling, transferring or disposing of any of their interests in property, pursuant to Ohio Rev.Code Ann. § 2923.34(E).
   —Count XIV seeks payment by Biosys of the reasonable value of GES products provided to Biosys for which payment has not been received.
   —Count XV alleges that the Defendants have published false and defamatory statements about the Plaintiff's products, production techniques and management.
   —Count XVI alleges that the Defendants have tortiously interfered with the Plaintiff's contractual relationships with its customers.
   —Count XVII alleges that due to the presence of malice, aggravated or egregious fraud, oppression or insult in the Defendants' conduct, punitive damages are appropriate in this case.
   —Count XVIII alleges that the Defendants were negligent in failing to immediately advise the Plaintiff of the alleged defects in its products.

2. Gysler is alleged to be the President of Biosys and a citizen and resident of Switzerland.

entitled to try this case under its chosen theory. Accordingly, this court will not treat the instant action as arising out of the X–O Contract. Instead, it will be deemed to have arisen out of the Plaintiff's ongoing business relationships with the Defendants. The X–O Contract is merely one of the final manifestations of those relationships, and as such, its terms cannot limit a comprehensive challenge to the Defendants' entire courses of conduct in this forum.

This suit is, therefore, broader than the forum selection clause. *See Farmland Industries, Inc. v. Frazier–Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1986). As Plaintiff's claims do not arise directly from the X–O Contract, Plaintiff could not have foreseen being bound by its forum selection clause in bringing these claims. At the most, the Defendants' actions with regard to the X–O Contract may be claimed as predicate acts to the establishment of some of Plaintiff's other claims.[3] Accordingly, Plaintiff's choice of forum prevails unless the Swiss Defendants can establish another reason for dismissal.

### B. Personal Jurisdiction

█ The Swiss Defendants move pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the claims against them due to this court's lack of personal jurisdiction. The exercise of personal jurisdiction over the Swiss Defendants is alleged to be improper because the requirements of the Ohio long-arm statute have not been met, and because the exercise of jurisdiction does not comport with the requirements of due process.

The Supreme Court examined the prerequisites to a federal court's exercise of jurisdiction in *Omni Capital, Int'l. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). The *Omni* Court held:

Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–45 [66 S.Ct. 242, 245–46, 90 L.Ed. 185] (1946). Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons.

484 U.S. at 104, 108 S.Ct. at 409. The Court further noted that "[t]oday, service of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure." *Id.*

Rule 4(f) describes the territorial limits of effective service.[4] Specifically, it authorizes service anywhere in the state in which the district court sits and anywhere otherwise authorized by federal statute or by the Federal Rules of Civil Procedure. The Plaintiff does not seriously dispute the Swiss Defendants' assertion that 18 U.S.C. § 1965(d) authorizes nationwide service of process, *see, e.g., Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1055 (S.D.N.Y.1987), but does not provide for international service. *See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.Supp. 1279, 1285 (S.D.N.Y.1989). Accordingly, the court will assume without deciding that in the instant matter § 1965(d) does not authorize service. *See also Shaw v. Rolex Watch U.S.A., Inc.*, 745 F.Supp. 982, 987 (S.D.N.Y. 1990).

Plaintiff asserts, however, that service is authorized by Rule 4(e). The second sen-

---

**3.** For instance, to prove that Strauss and Horsfall have violated their contracts with GES, the Plaintiff must prove that the X–O Contract is a nullity.

**4.** Rule 4(f) provides:

All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

tence of Rule 4(e) provides for service on out-of-state defendants by the means prescribed in state statutes or rules.[5] A federal court, therefore, may look "to the longarm statute of the State in which it sits to determine whether a defendant is amenable to service...." *Omni*, 484 U.S. at 105, 108 S.Ct. at 410.

The Ohio long-arm statute is found in Section 2307.382 Ohio Rev.Code Ann. (Anderson 1981 & Supp.1989). "Th[e] statute confers on the district court the ability to exercise specific or limited personal jurisdiction over a nonresident defendant where the cause of action arises out of an act or acts creating one of several designated relationships." *Creech v. Roberts*, 908 F.2d 75, 79 (6th Cir.1990).

The Plaintiff relies primarily upon § 2307.382(A)(1), which provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state; ...." "[I]t is a settled proposition of Ohio law that [the scope of § 2307.382(A)(1)] was intended to extend to the constitutional limits of due process...." *Creech*, 908 F.2d at 79 (citing *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224–25 (6th Cir. 1972)). The relevant inquiry, therefore, is whether, within the bounds of due process, Biosys and Gysler can be found to have transacted business in Ohio. *Id.*

The United States Court of Appeals for the Sixth Circuit has provided three criteria to be used in determining whether the exercise of jurisdiction comports with due process. They are:

First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir.1989) (quoting *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir.1968)), *cert. denied*, —— U.S. ——, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990).[6]

In addition, in *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989), the Sixth Circuit delineated the "settled procedural scheme to guide trial courts" in examining challenges to jurisdiction. The court stated that the plaintiff's "burden is merely that of making a *prima facie* showing that personal jurisdiction exists." *Id.* If that burden is met "the motion to dismiss should be denied, 'notwithstanding any controverting presentation by the moving party.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981)). The court specifically noted its concern lest "the door to a federal courtroom ... be slammed in the face of a plaintiff seeking to invoke it's powers where there is, in fact, no defect in personal jurisdiction." *Id.* at 1215.

Accordingly, the court has considered the written submissions of the parties in the instant matter to determine whether the Plaintiff has made a prima facie showing of the Swiss Defendants' amenability to service.[7] In doing so, the pleadings and affidavits were considered "in the light

---

**5.** Rule 4(e) provides:

... Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons ... upon a party not an inhabitant of or found within the state ... service may ... be made under the circumstances and in the manner prescribed in the statute or the rule.

**6.** The test provided in *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374 (6th Cir.1968) is a crystallization of the Sixth Circuit's cases applying *International Shoe Co. v. State of Washing-*

*ton,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (requiring that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'") (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

**7.** It is well established that "each defendants' contacts with the forum must be assessed individually." *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984).

most favorable to the plaintiff." *Id.* at 1214 (citing *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981)).

### 1. Purposeful Availment

The first and most important element of the *Mohasco Indus.* test is a determination whether the defendant purposely availed itself of the privilege of acting in the forum state or causing a consequence in the forum state. The Supreme Court has repeatedly emphasized the importance of this showing. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (stating that "[t]his 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts."); and *Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987).

The Sixth Circuit confronted the question of purposeful availment in the context of interstate contractual relations in the *LAK* case. 885 F.2d at 1300. The court noted:

> There is a difference between what *World–Wide Volkswagen [Corp. v. Woodson,* 444 U.S. 286, 299 [100 S.Ct. 559, 568, 62 L.Ed.2d 490] (1980) ] calls a mere "collateral relation to the forum State," ... and the kind of substantial relationship with the forum state that invokes by design the "benefits and protections of its laws. [*Hanson v.*] *Denckla,* 357 U.S. [235, 253 [78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283] (1958) ].... The Supreme Court has emphasized, with respect to interstate contractual obligations, that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182.

*Id.*

The Plaintiff has made the required prima facie showing that each of the Swiss Defendants has reached out and created continuing relationships with citizens of the state of Ohio. Biosys entered into two contracts with GES. The latter of these contracts was the X–O Contract which Gysler signed and allegedly negotiated. Gysler in his affidavit confirms that he travelled to Cleveland on October 16, 1989 to meet with the President of GES. This was just over a month before the X–O Contract was signed. *See* Affidavit of Gustavo Gysler, taken 9/5/90, affixed as exhibit to Defendants' Biosys Corporation and Gustavo Gysler Motion to Dismiss [hereinafter Motion to Dismiss].

The Plaintiff also alleges that Biosys Corporation maintained an agent, Horsfall, in Cleveland, and that he transacted business and communicated frequently with Biosys, Gysler, and Strauss. This is supported by the excerpts of Horsfall's deposition which were submitted by Plaintiff. *See* Plaintiff's Memorandum in Opposition to Defendants' Biosys Corporation and Gustavo Gysler Motion to Dismiss [hereinafter Plaintiff's Memorandum in Opposition to Motion to Dismiss], Exhibit A. *See also* Plaintiff's Supplemental Memorandum in Opposition to Defendants Biosys Corporation and Gustavo Gysler Motion to Dismiss [hereinafter Plaintiff's Supplemental Memorandum in Opposition], Exhibit C (telephone records of Horsfall). In addition, Plaintiff alleges that Biosys had GES products picked up in Cleveland by its agent Panalpina. Biosys has not disputed this.

Both Biosys and Gysler are alleged to have had extensive contact with GES. The X–O Contract provides for Biosys to send orders and payments to GES in Cleveland. *See also* Plaintiff's Memorandum in Opposition to Motion to Dismiss, Exhibit C (orders submitted by Biosys).

In addition, there are the underlying allegations of this case. The Plaintiff alleges, in essence, that the Defendants sought to steal their trade secrets by fraudulently entering and subsequently repudiating the X–O Contract. Thus, there is an allegation that the Defendants have reached into Ohio to acquire the trade secrets of an Ohio corporation by fraud, deception or theft.

The Plaintiff supports these assertions with the affidavit of Karl Ehrlich, the co-founder of a company which X–O, acting through its President, Gysler, sought to acquire. *See* Plaintiff's Memorandum in Opposition to Motion to Dismiss, Exhibit B, at 3 (stating that "[t]hey also indicated that they (X–O) were entering a contract for distribution with GES that they never intended to honor, and that they planned in the future to break this contract as soon as they could set up their own production facilities and that they would use product variability and potency as a basis for breaking the contract and competing."). A letter attempting to repudiate the X–O Contract on the grounds of product variability was sent by Gysler to GES in Cleveland on May 4, 1990. *See* Plaintiff's Supplemental Brief in Opposition, Exhibit D (two letters from Gysler to GES dealing with the repudiation of the X–O Contract).

Finally, the terms of the X–O Contract itself support a finding that the Swiss Defendants have availed themselves of the benefits and protections of Ohio's laws. Claims arising from the contract could only be brought by X–O in the State of Ohio. Thus, the Swiss Defendants had availed themselves of Ohio law as their only protection against a breach of the contract by GES.

The evidence presented by the plaintiff make a prima facie showing that the Swiss Defendants contacts with the forum were more than merely random, fortuitous or attenuated. Instead, the evidence seems to indicate a considered and deliberate establishment of a relationship with an Ohio corporation through which substantial Biosys business was transacted. As Gysler appears from the evidence to be the "point man" on the Biosys end of these transactions, he has purposefully availed himself of the benefits of the forum as well.

### 2. Arising out of the Forum State

The second *Mohasco Indus.* element—that the cause of action arise from the defendant's forum state activities—is also sufficiently established by the Plaintiff.

"An action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy." *Creech*, 908 F.2d at 80 (citing *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990)).

In *Serras*, 875 F.2d at 1213, the Michigan plaintiffs alleged that they bought a Tennessee restaurant in reliance upon the Tennessee defendant's fraudulent misrepresentations. Upon these facts, the court held that evidence of phone calls, mailings and a visit by the defendant's agent, considered along with the pleadings, were sufficient to support plaintiffs' allegation that the claim arose in Michigan. *Id.* at 1217–18.

The same can be said of the alleged fraudulent actions and evidence of contacts in the instant case. Based upon the evidence discussed in the prior section, the Plaintiff has succeeded in presenting a prima facie case.

### 3. Reasonableness

Finally, the third *Mohasco Indus.* factor requires the court to determine whether the exercise of jurisdiction over the Swiss Defendant's is reasonable. As the Sixth Circuit has noted, the third element is derived from the following statement in the *Burger King* case:

> [W]here a defendant who purposefully directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.

*Creech*, 908 F.2d at 80 (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85). The Sixth Circuit has also stated that "[w]hen the first two elements [of the *Mohasco Indus.* test] are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *American Greetings Corp. v. Cohn*, 839 F.2d 1164,

1170 (6th Cir.1988) (quoting *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982)).

The Plaintiff has made a prima facie showing that the exercise of jurisdiction is reasonable in this case, and the Swiss Defendants have failed to present a compelling argument that other factors make such an exercise unreasonable. While the Swiss Defendant's face an elevated burden in defending this suit in the United States, it is not unbearable. In addition, inconvenience can be mitigated in some respects through agreements between the parties and intervention by the court where necessary. In light of the actions alleged, the interests of the plaintiff and the forum state favor the exercise of jurisdiction by this court. Finally, while the interests of Switzerland must be considered, it seems clear that they do not mandate the conclusion that the exercise of jurisdiction over the Swiss Defendants will violate principles of fair play and substantial justice.

Accordingly, the court finds that it may properly exercise personal jurisdiction over the Swiss Defendants pursuant to § 2307.382(A)(1) Ohio Rev.Code Ann. (Anderson 1981 & Supp.1989).

### C. Service of Process

■ The Swiss Defendants move pursuant to Fed.R.Civ.P. 12(b)(5) to dismiss the claims against them due to the use by the Plaintiff of an improper manner of service of process. They allege that the only appropriate manner of service in Switzerland is by means of letters rogatory. The Plaintiff had attempted to perfect service by means of both letters rogatory and certified mail with return-receipt requested. At the time of this motion only service by certified mail had arguably been perfected. This, however, is no longer the case.

On November 28, 1990, the United States Department of State forwarded the completed letters rogatory to this court. The Swiss Defendants have now been served by Swiss officials in accordance with Swiss law, and accordingly, the objection to the validity of service by certified mail is moot.

The court is still faced, however, with the propriety of the service by means of the letters rogatory under Fed.R.Civ.P. 4. Rule 4(i)(1) provides:

When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: ...
(B) as directed by the foreign authority in response to a letter rogatory, when service ... is reasonably calculated to give actual notice....

As has been noted, *see supra* note 5, Rule 4(e) provides for service upon parties not inhabitants of the state in which the district court is held by means of that state's statutes or rules.

Plaintiff asserts that Ohio Rule of Civil Procedure 4.3 (Anderson 1982 & Supp.1989) authorizes service upon the Swiss Defendants as envisioned by Federal Rule 4(e). Ohio Rule 4.3 provides in pertinent part:

Service of process may be made outside of this state, as provided herein, in any action in this state, upon a person who at the time of service of process is a nonresident of this state.... The term "person" includes an individual ... or a corporation, ... who, acting directly or by an agent, has caused an event to occur out of which the claim which is the subject of the complaint arose, from the person's:

(1) Transacting business in this state;

. . . . .

(4) Causing tortious injury in this state by an act of omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;

. . . . .

(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might rea-

sonably have expected that some person would be injured thereby in this state;

. . . .

In the preceding section of this order it was determined that the Plaintiff had made a prima facie showing that the Swiss Defendants had transacted business in Ohio. This necessarily means that service of the summons and complaint was authorized by Ohio Rule 4.3.[8] Accordingly, the instant case falls within the scope of Federal Rule 4(e) and service could properly be perfected in the manner described in Federal Rule 4(i)(1)(B).

### D. Venue

■ Defendant Gysler moves pursuant to Fed.R.Civ.P. 12(b)(3) to dismiss the claims against him because the case is improperly venued under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a).[9] In light of the fact that all Defendants do not reside in this judicial district, venue will be appropriate under § 1391(b) only if the claim is found to have arisen within the Northern District of Ohio.

In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716–17, 61 L.Ed.2d 464 (1979), the Supreme Court noted that "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." (citation omitted). In discussing § 1391(b) the Court stated that although ". . . Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an

unfettered choice among a host of different districts[,] . . . in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim." *Id.* at 185, 99 S.Ct. at 2717.

The Sixth Circuit construed the *Leroy* case as adopting a "weight of the contacts" test for venue determinations. *Onderik v. Morgan*, 897 F.2d 204, 207 (6th Cir.1989). In addition, the court stated that "venue is appropriate in 'any district in which a substantial part of the acts, events or omissions occurred that gave rise to the claim for relief.'" *Id.* (quoting *Sutain v. Shapiro and Lieberman*, 678 F.2d 115, 117 (9th Cir.1982)). Thus, the Sixth Circuit has clearly held that venue may be appropriate in more than one district.

An examination of the underlying facts of this case makes clear that a substantial number of the acts, events or omissions that gave rise to this complaint occurred in the Northern District of Ohio. First, the plaintiff is located in the Northern District and is incorporated in the state of Ohio. Second, the products underlying the relationship between the parties are produced in Ohio. Third, the communications which are alleged to constitute mail and wire fraud were all directed into the Northern District.[10] Fourth, Biosys' employees and

---

**8.** In addition, the court finds that the Plaintiff has made a prima facie showing that service of the summons and complaint was authorized pursuant to Ohio Rule 4.3(A)(4) & (9). *See* Affidavit of Karl F. Ehrlich, taken July 25, 1990 (affixed to Plaintiff's Memorandum in Opposition to Defendants' Biosys Corporation and Gustavo Gysler Motion to Dismiss as Exhibit B).

**9.** Section 1391(b) provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.
  Section 1965(a) provides:

Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

**10.** In *Murray v. Allen County Claims & Adjustments, Inc.*, 550 F.Supp. 128 (S.D.Ohio 1982), the plaintiff claimed that certain communications from the defendant violated the Fair Debt Collection Practices Act. These communications originated outside the Southern District of Ohio. In holding that venue was appropriate, the court stated:

Although no facts have as yet been established, defendant concedes that communications were made to plaintiff after he had

liaisons with GES, Horsfall and Strauss, were located in the Northern District during the period in question. And fifth, the situs of these causes of action is the Northern District.[11]

Due to the court's holding that venue is proper under § 1391(b), it is not necessary to examine the propriety of venue under § 1965(a).

### E. Forum Non Conveniens

■ Finally, the Defendants claim that this action should be dismissed based upon the doctrine of *forum non conveniens.* This doctrine was laid out by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), in which the Court stated:

> The [district] court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

*Id.* at 508, 67 S.Ct. at 843 (footnote omitted). In addition, the Court noted that the cases to which the doctrine applies are "rather rare." *Id.* at 509, 67 S.Ct. at 843.

The Sixth Circuit recently held that "[a] plaintiff who is a United States citizen should not be deprived of his choice of forum except when the trial would prove oppressive and vexatious to defendant, out of all proportion to the convenience to plaintiff, or when it would be inappropriate because of administrative or legal problems of the court." *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 454 (6th Cir.1988). *Gould* was a RICO case brought by a United States corporation against several foreign corporations.

The court fails to find the type of vexatious or oppressive inconvenience required to deprive the Plaintiff of its choice of forum. In addition, of the various conflicting interests involved, one of the most weighty is the interest of the United States in a uniform application of RICO. Accordingly, dismissal under the doctrine of *forum non conveniens* is not appropriate in the instant case.

### III. HORSFALL'S MOTION TO APPLY THE LAW OF SWITZERLAND TO THE INTERPRETATION OF THE X–O CONTRACT AND TO THE DEFINITION OF TRADE SECRETS

■ As noted above, the X–O Contract specifically provided that "[t]his Agreement shall be governed by the laws of Switzerland ... in case of claims from [GES]." On August 29, 1990, Defendant Horsfall filed a motion requesting that the court apply the law of Switzerland to all claims and interpretations of the X–O Contract and to the definition of trade secrets. The allegation that all of plaintiff's claims arise out of the X–O Contract has already been refuted. *See supra* section II(A). This, however, does not dispose of the issue of Swiss law applicability.

Plaintiff's recovery on numerous counts of its complaint is predicated upon proof of the invalidity of the X–O Contract. For example, Count VI alleges that Horsfall breached the Horsfall Agreement. This, however, is only possible if the X–O Con-

moved to the Southern District of Ohio. Assuming that such communications did violate the FDCPA, we can conclude that plaintiff suffered an injury in the Southern District. We further conclude, on the basis of this concession, that the activities that transpired in this district were "not insubstantial in relation to the totality of events giving rise to the plaintiff's grievance." *Id.* at 131–32.

**11.** In *Lachman v. Bank of Louisiana in New Orleans,* 510 F.Supp. 753, 760 (N.D.Ohio 1981), the court stated that "[i]t is well established that

the *situs* of a tort-type cause of action is the location the injury is suffered." (citing *Richards v. United States,* 369 U.S. 1, 11 n. 24, 82 S.Ct. 585, 592 n. 24, 7 L.Ed.2d 492 (1962); other citations omitted). Further, the *Lachman* court noted that even if the *situs* was the location where the last act necessary to constitute the cause of action took place, "[t]he 'last element' of a tort cause of action is generally the sufferance of damages." *Id.* at 760 n. 2. "Thus, the 'location of the injury' rule and the 'last act' rule have been merged." *Id.*

tract, which by its terms replaced all previous contracts between GES and Horsfall, is a nullity. The court will, therefore, be required to interpret the X–O Contract and determine whether it was the product of fraud.[12] To do so, it is necessary to determine the appropriate law under which to proceed.

Initially, the Plaintiff alleges that the choice of law provision is not relevant due to the presence of fraud. The Plaintiff, however, alleges only general fraud, not fraud in the inducement to enter into the choice of law provision. Since the Ohio courts have not addressed the effect of general allegations of fraud on a forum selection clause, the court adopts the reasoning of the Supreme Court in *Scherk v. Alberto Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). In *Scherk*, the Court stated:

> In *The Bremen* [*v. Zapata Offshore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)] we noted that forum-selection clauses "should be given full effect" when "a freely negotiated private international agreement [is] unaffected by fraud...." 407 U.S., at 13, 12 [92 S.Ct., at 1915, 1914]. This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.

*Id.* at 519 n. 14, 94 S.Ct. at 2457 n. 14. The Court's reasoning is equally persuasive when applied to choice of law provisions. Thus, absent concrete allegations of fraud regarding this particular provision, the court turns to Ohio law to ascertain the enforceability of this provision.

In *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683, 686 (1983), the Supreme Court of Ohio adopted the reasoning of Section 187 of the Restatement of Laws 2d, Conflict of Laws (1971) 561 which states:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

It is clear in the instant matter that a substantial relationship exists between Switzerland and both the Defendants and the transaction in question. In addition, Plaintiff fails to allege any fundamental policy of Ohio which is violated by the application of Swiss law. Accordingly, the choice of law provision will be enforced and Swiss law will be used to interpret and determine the validity of the X–O Contract. There is no other area in which it would be appropriate to apply Swiss law at this time.[13]

For the reasons stated herein, the Swiss Defendants' motion to dismiss is DENIED and Horsfall's motion to apply Swiss law is

---

12. The Plaintiff alleges that because Horsfall is not a party to the X–O contract, he has no standing to assert that Swiss law be used to interpret it. As has been shown, however, recovery on several of Plaintiff's claims against Horsfall is predicated upon a showing that the X–O Contract is void. Horsfall certainly has standing to move the court regarding the interpretation of the contract, either as a third-party beneficiary thereof, or as a litigant with a material interest in the court's determination.

13. Horsfall provides no support for his assertion that Swiss law should be applied to the definition of trade secrets. Accordingly, the court finds no reason to apply the laws of Switzerland in this area.

GRANTED to the extent that Swiss law is necessary to interpret the X–O Contract.

IT IS SO ORDERED.