Anne VLASAK, f/k/a Anne Burmeister, Plaintiff,

v.

RAPID COLLECTION SYSTEMS, INC., Barbara Bradford, Dan Wolfe, and Mrs. Sherlyn, Defendants.

No. 96 C 5836.

United States District Court, N.D. Illinois, Eastern Division.

May 7, 1997.

O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, IL, for plaintiff.

John Michael Hynes, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court is the defendants' motion to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons stated in this opinion, the defendants' motion is denied.

## BACKGROUND

Invoking the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C.

§§ 1692–1692*o* (1994), Anne Vlasak has filed a series of claims against Rapid Collection Systems, Inc. ("Rapid").[1] Vlasak, a former resident of Arizona, now resides in Chicago. Rapid is a debt collection agency located in Phoenix, Arizona. Vlasak alleges that Rapid's debt collection efforts violated the Act because Rapid made false and deceptive representations, engaged in oppressive and abusive conduct, and communicated directly with Vlasak without consulting her attorney. Vlasak contends that this court has jurisdiction over her claims pursuant to § 1692k(d) of the FDCPA[2] and 28 U.S.C. § 1331 (1993).[3]

Viewed in the plaintiff's favor, the relevant facts are as follows. In March 1996, an Arizona county court entered a judgment against Philip Burmeister, Vlasak's former husband. Burmeister was ordered to pay $1,236.00 (plus interest and after-accruing costs) in relation to a lease agreement for an apartment in Gilbert, Arizona. Seeking to collect on the judgment, the manager of the property referred the matter to Rapid. On April 30, 1996, Rapid, from its Arizona office, placed a telephone call to Vlasak in Illinois and informed her that she was required to comply with the county court's judgment order. After this conversation had concluded, Vlasak called Rapid back the same day and was told that the debt would be fully discharged if Vlasak forwarded $700.00 via overnight delivery. Vlasak later received a letter at her residence in Illinois, dated April 30, 1996, in which Rapid urged her to remit $1,331.00 in connection with the judgment. On or about May 4, 1996, Vlasak received a message on her answering machine instructing her to call Rapid. Soon after, Vlasak received another letter, dated May 6, 1996, in which Rapid again insisted that Vlasak owed a total of $1,331.00. On or about May 7, 1996, Rapid called Vlasak and stated that because she failed to send $700.00 by overnight delivery, Rapid would not accept any payment less than $1,331.00. On or about May 10, 1996, Rapid made another phone call to Vlasak during which Rapid indicated that nonpayment could damage Vlasak's credit rating and result in the garnishment of Vlasak's wages. Vlasak subsequently received a third letter, dated June 4, 1996, in which Rapid stated that it would recommend legal action against Vlasak if she did not pay the $1,331.00 balance within five days. Three months later, in September 1996, Vlasak sued Rapid for alleged violations of the FDCPA based on these telephone calls and letters.

Rapid has now filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Rapid notes that it is a small business with seven employees and a single office in Phoenix. Rapid also contends that all of its accounts come from clients whose principal place of business is in Arizona, and that approximately 95 percent of the debtors connected with those accounts reside in Arizona. Rapid further maintains that in its five-year history, it has made only two "contacts" with Illinois in relation to its debt collection activities. Finally, Rapid argues that it owns no property in Illinois, has no offices in Illinois, and neither solicits nor conducts business in Illinois. We hold, however, that Rapid may be called into Illinois court consistent with the Due Process Clause. We therefore deny Rapid's motion.

## DISCUSSION

The standards by which the court must evaluate a 12(b)(2) motion to dismiss are straightforward. The plaintiff bears the burden of providing sufficient evidence to establish a *prima facie* case for personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997); *Michael J. Neuman & Assocs. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir.1994); *Arena*

---

1. The complaint also names three employees of Rapid Collection Systems as defendants. For convenience, we will refer to the defendants collectively as "Rapid."

2. Section 1692k(d) states: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."

3. Section 1331 reads in full: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

*Football League, Inc. v. Roemer,* 947 F.Supp. 337, 339 (N.D.Ill.1996). The jurisdictional allegations in the complaint are taken as true unless controverted by the defendant's affidavits. Any conflicts among affidavits must be resolved in the plaintiff's favor. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987); *Cherry Communications, Inc. v. Coastal Tel. Co.,* 906 F.Supp. 452, 454 (N.D.Ill.1995); *Czarobski v. St. Kieran's Church,* 851 F.Supp. 1219, 1220 (N.D.Ill.1994). In disputes involving a federal question, a *prima facie* case for personal jurisdiction consists of two parts. First, the plaintiff must demonstrate that haling the defendant into court accords with the Due Process Clause of the Fifth Amendment. Second, the plaintiff must show that the defendant is amenable to service of process from the court. *United States v. Martinez De Ortiz,* 910 F.2d 376, 381–82 (7th Cir.1990); *Boston Chicken, Inc. v. Market Bar-B-Que, Inc.,* 922 F.Supp. 96, 97 (N.D.Ill. 1996). As we discuss in the paragraphs that follow, Vlasak has fulfilled both requirements.

### Due Process

Generally, a court's assertion of personal jurisdiction must comport with " 'traditional notions of fair play and substantial justice' " to satisfy the Due Process Clause. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)); *see also Quill Corp. v. North Dakota,* 504 U.S. 298, 307, 112 S.Ct. 1904, 1910, 119 L.Ed.2d 91 (1992) (reiterating the "fair play and substantial justice" standard of *International Shoe* ). The Clause requires that individuals have fair warning that, based on their conduct, they may be haled into a particular court. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). This requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The touchstone of the due process analysis is whether the defen-

dant purposefully established "minimum contacts" with the political unit encompassing the forum. *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030–31, 94 L.Ed.2d 92 (1987) (citing *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183) These minimum contacts must be grounded in " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). Once it has been determined that the defendant established minimum contacts within the forum, a court may consider factors such as the defendant's interest in avoiding burdensome and gravely inconvenient litigation, the plaintiff's interest in obtaining accessible relief, and the judicial system's interest in efficiently resolving controversies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564–65.

The polity with which a defendant must have minimum contacts often depends on the nature of the court's subject matter jurisdiction. A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident "only if a court of the state in which it sits would have such jurisdiction.' " *Klump v. Duffus,* 71 F.3d 1368, 1371 (7th Cir.1995) (quoting *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1243 (7th Cir.1990)), *cert. denied,* —— U.S. ——, 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996). If the defendant has not established minimum contacts with the state, then *no* court located within that state may exercise judicial power over the defendant; "limitations on the power of the state therefore carry over to diversity litigation." *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir.1987). When subject matter jurisdiction is based on federal law, however, the defendant must have sufficient contacts "with the United States as a whole rather than any particular state or other geographic area." *Martinez De Ortiz,* 910 F.2d at 382; *see also United Rope Distribs., Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532, 534 (7th Cir.1991)

("When a national court applies national law, the due process clause requires only that the defendant possess sufficient contacts with the United States."). The reason is simple: Instead of implementing the policies of a particular state, a federal court in a federal question case is exercising the power of the United States. *Lisak*, 834 F.2d at 671; *see also Diamond Mortgage Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir.1990) (observing that the number of contacts between a defendant and the forum state "has no bearing upon whether the United States may exercise its power over the [defendant] pursuant to its federal question jurisdiction").

■ Here, the threshold inquiry into "minimum contacts" need not detain us. Indeed, most challenges to personal jurisdiction in federal question cases revolve around the defendant's amenability to service, since the due process requirement is easily satisfied. *Merrill Lynch Bus. Fin. Servs., Inc. v. Marais*, No. 94 C 3316, 1995 WL 608573, at \*4 (N.D.Ill. Oct.12, 1995); *see also Brujis v. Shaw*, 876 F.Supp. 975, 977 (N.D.Ill.1995) (bypassing the minimum contacts analysis altogether); *Morris v. Genmar Indus., Inc.*, No. 91 C 5212, 1993 WL 217246, at \*2 (N.D.Ill. June 18, 1993) (noting that, when subject matter jurisdiction is predicated on the existence of a federal question, "personal jurisdiction devolves into the issue of whether the defendant is amenable to service of process in that district"). A defendant "has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court" if he resides or conducts business on American soil. *Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir.1979); *see also Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F.Supp. 1316, 1319 (N.D.Ill.1996) (finding that a corporation engaging in business in the United States established minimum contacts). Rapid was incorporated and continues to do busi-

ness in the continental United States. All of Rapid's employees—including the company president—reside in the United States. Rapid's jurisdictional objections cannot, therefore, be based on the Due Process Clause of the Fifth Amendment.

### Amenability to Service

Minimum contacts with the United States are necessary, but not sufficient, to authorize a district court's assertion of personal jurisdiction. Aside from these contacts, a defendant must also be amenable to service of process. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987) (holding that before a court may exercise personal jurisdiction there must be both "a constitutionally sufficient relationship between the defendant and the forum" and "a basis for the defendant's amenability to service of summons"); *see also Swaim v. Moltan Co.*, 73 F.3d 711, 719 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 2499, 135 L.Ed.2d 191 (1996) (commenting that "[v]alid service of process is a prerequisite to a district court's assertion of personal jurisdiction"). Service of process in both diversity and federal question cases provided for in Federal Rule of Civil Procedure 4(k). Rule 4(k) provides that service of a summons is effective to establish jurisdiction over the person of a defendant (1) who could be subjected to the jurisdiction of a court in the state in which the district court is located, or (2) when authorized by a statute of the United States.[4] Some federal legislation expressly provides for nationwide service of process. *See, e.g.,* 29 U.S.C. § 1132(e)(2) (the Employment Retirement Income Security Act); 18 U.S.C. § 1965(a) (the Racketeer Influenced and Corrupt Organizations Act); 15 U.S.C. § 78aa (the 1934 Securities and Exchange Act). Absent such legislation, however, service of process is authorized only

---

4. Rule 4(k)(1) provides in full:
 Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant
 (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or
 (B) who is a party joined under Rule 14 or Rule 19 and is served at a place within a

judicial district of the United States and not more than 100 miles from the place from which the summons issues, or
 (C) who is subject to the federal interpleader jurisdiction under 29 U.S.C. § 1335, or
 (D) when authorized by a statute of the United States.

when the defendant would be amenable to service under the long-arm statute of the state in which the district court sits. Fed. R.Civ.P. 4(k)(1); *Marais,* 1995 WL 608573 at *5.

Because the FDCPA does not authorize nationwide service of process, Rapid's amenability to service is governed by the Illinois long-arm statute. Under 735 ILCS 5/2–209(a) (1992), a defendant "submits" to the jurisdiction of Illinois courts if he commits any one of a series of specified acts.[5] Vlasak argues that Rapid is subject to the jurisdiction of Illinois courts under two provisions of the statute. First, Vlasak contends that by mailing four letters and placing three telephone calls into Illinois, Rapid "transacted business" in Illinois pursuant to § 2–209(a)(1). Second, Vlasak asserts that the letters and phone calls also constitute a "tortious act" under § 2–209(a)(2). In response, Rapid argues that it did not conduct any business in Illinois because all of its contractual obligations with creditors were created in Arizona. Rapid also maintains that its attempts to collect from Vlasak do not constitute independent "transactions" under the long-arm statute. Rapid further contends that it did not commit a "tortious act" in the State of Illinois because "an FDCPA claim is not a tort but is a statutory creation involving strict liability analyzed under an 'unsophisticated consumer' standard." Memorandum of Law in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction at 4.

 While we express no opinion as to whether Rapid transacted business in Illinois, Rapid clearly committed a "tortious act" as defined by the long-arm statute. The phrase "tortious act" is given a broad construction under Illinois law. For jurisdictional purposes the phrase is not limited to acts which create common law liability; instead, "it encompasses any act that constitutes a breach of duty to another imposed by law." *Florendo v. Pan Hemisphere Transp., Inc.,* 419 F.Supp. 16, 17 (N.D.Ill.1976) (Grady, J.); *Estate of Wrigley,* 104 Ill.App.3d 1008, 60 Ill.Dec. 757, 766, 433 N.E.2d 995, 1004 (1982) ("A tortious act includes any act committed within Illinois which involves a breach of a duty owed to another and makes the person committing the act liable to the other for damages."); *see also In re Marriage of Highsmith,* 111 Ill.2d 69, 94 Ill.Dec. 753, 756, 488 N.E.2d 1000, 1003 (1986) (reaffirming that a breach of a duty imposed by law constitutes a "tortious act" under the long-arm statute); *International Bus. Mach. Corp. v. Martin Property & Cas. Ins. Agency, Inc.,* 281 Ill.App.3d 854, 217 Ill.Dec. 197, 200, 666 N.E.2d 866, 869 (1996) (noting that several courts have held that "tortious act" should be given a liberal definition). A violation of the FDCPA unquestionably constitutes a breach of a legal duty, *see, e.g.,* 15 U.S.C. §§ 1692b–1692h (imposing a series of behavioral obligations on debt collectors), and collectors who fail to comply with the provisions of the Act may be liable for damages and attorney fees. 15 U.S.C. § 1692k. As a result, we have no difficulty concluding that the acts alleged in the complaint are "tortious" under § 2–209(a)(2). *See also Brujis,* 876 F.Supp. at 977 (holding that the defendants fell within the ambit of § 2–209 because "the tortious acts they allegedly committed in Illinois—authorizing and directing the use of the misleading ['United States Credit Bureau'] name in violation of the FDCPA—are sufficient to confer jurisdiction"); *Bailey v. Clegg, Brush & Assocs., Inc.,* No. 90 CV 2702, 1991 WL 143461, at *2 (N.D.Ga.1991) (finding that alleged violations of the FDCPA "are analogous to the commission of a tortious act" under the Georgia long-arm statute).

Moreover, even if we were mistaken in our determination that Rapid committed a "tortious act," jurisdiction would still be proper under the catch-all provision of the Illinois long-arm statute. Under 735 ILCS 5/2–209(c) (1992)—a provision inexplicably ignored by the plaintiff in her brief—Illinois courts may exercise jurisdiction on any basis permitted by the United States and Illinois

---

5. The relevant portion of § 2–209(a) states that a person is subject to the jurisdiction of Illinois courts as to any cause of action arising from

"[t]he transaction of any business within the State" or "[t]he commission of a tortious act within this State."

Constitutions.[6] Section 2–209(c) thus authorizes personal jurisdiction to the constitutional limit, collapsing the statutory analysis into a due process inquiry. *RAR*, 107 F.3d at 1276; *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992); *see also Fluid Management Ltd. Partnership v. H.E.R.O. Indus., Ltd.*, No. 95 C 5604, 1997 WL 112839, at *5 (N.D.Ill. Mar.11, 1997) (explaining that "[e]ven absent the commission of a tort in Illinois . . . personal jurisdiction can still be obtained over Defendants if the constitutional due process requirements are satisfied"); *Rao Design Eng'g, Inc. v. Wisconsin Engraving Co.*, No. 96 C 3945, 1996 WL 535328, at *3 (N.D.Ill. Sept.17, 1996) (Grady, J.) (recognizing that § 2–209(c) "allows [a] court to find jurisdiction without reference to any of the enumerated acts in the long-arm statute"); *Dickie v. City of Tomah*, 782 F.Supp. 370, 372 (N.D.Ill.1991) (stating that § 2–209(c) "obviates the necessity of the defendant's engaging in a statutorily enumerated act in order to establish jurisdiction over it"). Vlasak is therefore entitled to a federal forum so long as an Illinois court's assertion of personal jurisdiction over Rapid would be compatible with the Due Process Clause of the Fourteenth Amendment.[7]

■ This, of course, brings us back to the "minimum contacts" analysis of *International Shoe* and its progeny. Rapid contends that it should not be haled into court in Illinois because it did not "purposefully avail" itself of the privilege of conducting activities here. Rapid argues that the debt allegedly owed by Vlasak stems from an apartment lease in Arizona, and that Rapid only initiated communication with Vlasak in Illinois because she moved there. As a consequence,

Rapid asserts, it did not "purposefully" establish contacts with Illinois. Rapid also emphasizes that it is a small, uninsured collection agency that conducts nearly all of its business in Arizona. According to Rapid, requiring it to litigate approximately 2,000 miles away from its principal place of business would impose a severe financial burden and would be contrary to the notion of "fair play and substantial justice." For two reasons, however, we find that an Illinois court could exercise personal jurisdiction over Rapid within constitutional bounds.[8]

First, based on its phone calls and letters to Vlasak, Rapid had fair warning that it might be called before an Illinois court. The main factor in the minimum contacts inquiry is not physical presence in the forum state but rather "foreseeability." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir.1990); *Mors v. Williams*, 791 F.Supp. 739, 742 (N.D.Ill.1992). Simply stated, the defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being haled into court there. *FMC v. Varonos*, 892 F.2d 1308, 1313 (7th Cir.1990) (citing *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183); *S.T.R. Indus., Inc. v. Palmer Indus., Inc.*, No. 96 C 4251, 1996 WL 717468, at *2 (N.D.Ill.Dec.9, 1996) (Grady, J.). In this case, Rapid's connections fit the bill. Vlasak's jurisdictional allegations are not premised on a series of attenuated contacts between Rapid and the state of Illinois. Rather, the complaint alleges that Rapid knowingly telephoned and sent dunning letters to Vlasak in Illinois in an attempt to collect an outstanding debt.[9] Far from being random or fortuitous, these contacts are the very basis of Vlasak's claims for relief under

---

6. Section 2–209(c) reads in full: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."

7. The Illinois Supreme Court has indicated that the Due Process Clause of the Illinois Constitution is not necessarily coterminous with the Due Process Clause of the Fourteenth Amendment. *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990). Unfortunately, however, Illinois courts "have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." *RAR*, 107 F.3d at 1276. That being the case, and since the parties

have not discussed state constitutional law in their briefs, the analysis that follows will focus on the federal Due Process Clause.

8. The discussion that follows also illustrates why we decline to follow the logic of *Krambeer v. Eisenberg*, 923 F.Supp. 1170 (D.Minn.1996) and *Hawkins v. Harston*, No. 93 CV 72031, 1994 WL 902366 (E.D.Mich. Jan.31, 1994). Both of those cases held that a court may not exercise personal jurisdiction over a defendant on the basis of a single dunning letter.

9. Rapid's argument that it did not "purposefully" establish contacts with Illinois is wordplay.

the FDCPA. *See Paradise v. Robinson & Hoover*, 883 F.Supp. 521, 525 (D.Nev.1995); *Russey v. Rankin*, 837 F.Supp. 1103, 1105 (D.N.M.1993); *Bailey*, 1991 WL 143461 at *2 (all holding that the state in which a plaintiff resides may exercise personal jurisdiction over a defendant when the defendant's communications with the plaintiff "are the precise subject matter of [an] action pursuant to the FDCPA"); *see generally Heritage House*, 906 F.2d at 283–84 (commenting that a defendant who "reaches out" through telephone and mail contacts should not be able to avoid jurisdiction simply because it has not set foot in a particular state). It can hardly be gainsaid that Rapid knew or should have known that it might be held accountable in Illinois for its debt collection activities there. *See Sluys v. Hand*, 831 F.Supp. 321, 325 (S.D.N.Y.1993) ("Defendant knew or reasonably should have known that by sending the debt collection letters into New York, he was running the risk of suit in New York in connection with that activity.").

■ Second, that litigation would be less expensive for Rapid if conducted in Arizona does not make Illinois an improper forum. Inconvenience is not a synonym for unconstitutionality. As the Seventh Circuit explained in *United Rope*, "[w]hether the forum within the United States is convenient for the defendant is a question of venue and discretionary doctrines allowing transfers; it has nothing to do with judicial power." 930 F.2d at 534; *see also Lisak*, 834 F.2d at 671 (stating that a defendant "may not demand that the court applying the law of the United States be conveniently located"); *Fitzsimmons*, 589 F.2d at 333 (commenting that the jurisdictional requirement of "fairness" is related "to the fairness of the exercise of power by a particular sovereign, not the fairness of imposing the burdens of litigating in a distant forum"). Thus, while it remains true that a defendant may not be summoned into court if he presents a "compelling case" that other considerations make the exercise of jurisdic-

tion unreasonable, "[m]ost such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185. Under 28 U.S.C. § 1404(a) (1994),[10] for example, a court may transfer a case to another forum for the convenience of the parties and their witnesses. *See id.* (specifically noting that a defendant may seek a change of venue if he would otherwise be substantially inconvenienced); *see generally SRAM Corp. v. SunRace Roots Enter. Co.*, 953 F.Supp. 257, 259 (N.D.Ill.1997) (observing that the propriety of a transfer under § 1404(a) depends on the plaintiff's choice of forum, the site of material events, the availability of evidence in each forum, and the convenience to the parties of litigating in the respective forums). The difficulties Rapid may encounter if required to litigate in Illinois should not be taken lightly. Nevertheless, those difficulties do not justify an outright dismissal of Vlasak's complaint.

Furthermore, Rapid's professed hardship is only half the equation. While the burden placed on the defendant is always a primary concern, that burden must be considered in light of the plaintiff's interest in obtaining convenient and effective relief. *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–65; *see also Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85 (observing that considerations such as the plaintiff's interest in obtaining relief "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required"). When an individual receives calls or letters from a distant collection agency—and when those calls or letters are allegedly illegal under the FDCPA—it makes sense to permit that individual to file suit where he receives the communications. Otherwise, collection agencies "could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned." *Sluys*, 831 F.Supp. at 324; *see*

---

Rapid contends neither that it unwittingly mailed collection letters to Vlasak by virtue of a mechanical error nor that its employees were in some sort of a trance when they contacted Vlasak by telephone. Quite to the contrary, Rapid obviously had a very clear purpose in mind when it communicated with Vlasak in Illinois: to collect a debt on behalf of one of its clients.

10. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

also *Lachman v. Bank of La.,* 510 F.Supp. 753, 758 (N.D.Ohio 1981) (emphasizing that the purpose of the FDCPA and other consumer protection legislation "would be frustrated if consumers had to travel long distances to file and prosecute lawsuits against banks and credit card issuers"). Indeed, Congress expressly recognized that debt collectors may obtain an unfair advantage by conducting legal proceedings "in courts which are so distant or inconvenient that consumers are unable to appear." S.Rep. No. 95–382, at 5 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699; *see also* 15 U.S.C. § 1692i(a) (requiring debt collectors to file suit where the consumer resides, where the underlying contract was signed, or where the real property at issue is located). Viewed in this light, Rapid's argument that shuttling back and forth between Arizona and Illinois would be costly is something of a double-edged sword: Any inconvenience suffered by Rapid if forced to litigate in Illinois would presumably be just as acute for Vlasak were she required to litigate in Arizona. Without an Illinois forum, Vlasak might be precluded altogether from maintaining her case.

## CONCLUSION

For the reasons outlined in this opinion, Rapid's motion to dismiss Vlasak's complaint for lack of personal jurisdiction is denied.