Anthony REESE

v.

**ARROW FINANCIAL SERVICES, LLC, et al.**

No. Civ. 3:00CV827(JBA).

United States District Court, D. Connecticut.

June 14, 2001.

**RULING ON PENDING MOTIONS**
**[Docs. ## 23, 11]**

ARTERTON, District Judge.

Plaintiff filed this suit on behalf of himself and three putative classes, claiming that defendants Arrow Financial Services, LLC ("Arrow"), Robert Lavin, Jack Lavin and Ronald Lavin violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692(d), (e) and (f) ("FDCPA") and the Connecticut Uniform Trade Practices Act, Conn.Gen.Stat. § 42–110a ("CUTPA") by their activities in connection with collecting on charged-off debt bought by defendant Arrow. According to plaintiff, defendant Arrow attempted to collect on his charged-off debt without advising plaintiff that the statute of limitations had run on such debt or that making payment on the debt would waive the statute of limitations defense and subject plaintiff to having the debt reported on his credit report. Plaintiff further contends that defendant Arrow reported the information on the charged-off debt to credit reporting services although the underlying debt was too old to be reported.

Plaintiff seeks relief on behalf of three putative classes: (1) a one-year FDCPA class of all Connecticut residents whose consumer charged-off debt was purchased by Arrow or an entity related to the defendants when it was more than six years old, and from whom Arrow elicited payment on the debt without disclosing information essential for the consumer to make an informed decision about the consequences of renewing the statute of limitations; (2) a one-year FDCPA class of all Connecticut residents whose consumer charged-off debt was purchased by Arrow or an entity related to defendants when it was more than seven years old, and which debt was reported by Arrow on the consumer's credit report, either directly or because of a judgment in favor of Arrow; and (3) a three-year CUTPA class consisting of all Connecticut residents whose consumer charged-off debt was purchased by Arrow or an entity

related to the defendants when it was more than six years old, and from whom Arrow elicited payment on the debt without disclosing information essential for the consumer to make an informed decision about the consequences of renewing the statute of limitations.[1]

Currently pending are the individual defendants' (Robert Lavin, Jack Lavin and Ronald Lavin) motion to dismiss for lack of personal jurisdiction [Doc. # 23] and plaintiff's motion for class certification [Doc. # 11]. For the reasons discussed below, defendants' motion to dismiss is granted and plaintiff's motion for class certification is denied.

## I. Defendants' motion to dismiss

The individual Lavin defendants have moved to dismiss for lack of personal jurisdiction. Robert Lavin is the founder and Chairman of Arrow, Jack Lavin is the President and Chief Executive Officer of Arrow, and Ronald Lavin is the Executive Vice President and Chief Operating Officer of Arrow. According to plaintiff, because it is undisputed "that the individual defendants are the officers of the Connecticut-licensed collection agency, are debt collectors, and that they generally ratified and approved collection letters, knowing that some of the letters might be sent to debtors in Connecticut," personal jurisdiction over the individual Lavin defendants is proper. Pl.Opp. at 5.

■ On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over defendant. *Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). "In resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Robertson–Ceco Corp.*, 84 F.3d at 567.

The constitutional due process limitations on jurisdiction "require that a nonresident corporate defendant have 'minimum contacts' with the forum state such that it would reasonably anticipate being haled into court there." *Combustion Engineering, Inc. v. NEI Int'l Combustion Ltd.*, 798 F.Supp. 100, 103 (D.Conn.1992) (*citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). In determining whether the requisite constitutional minimum contacts exist, the Court is to consider "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

Due process prohibits maintenance of a suit in the forum state if it "offend[s] 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). As the Supreme Court observed in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985),

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

The two cornerstones of the "purposeful availment" requirement are voluntariness and foreseeability. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

---

1. Plaintiff amended his request for certification in response to defendant's opposition. *See* Doc. # 43 at 3. The first and third classes are now identical, apart from the time period.

On a motion to dismiss, plaintiff's proof of jurisdiction is not limited to the allegations of his complaint. "Unlike a motion to dismiss for failure to state a claim under 12(b)(6), a motion to dismiss under 12(b)(2) is a test of the plaintiff's actual proof and, therefore, the court will consider affidavits submitted by the parties as well as the pleadings." *Shaw v. American Cyanamid,* 534 F.Supp. 527, 528 (D.Conn.1982). Where the parties have conducted jurisdictional discovery but have not held an evidentiary hearing, the plaintiff must allege facts that, " 'if credited . . ., would suffice to establish jurisdiction over the defendant.' " *Chaiken v. VV Publishing Corp.,* 119 F.3d 1018, 1025 (2d Cir.1997) (quoting *Metropolitan Life Ins. Co.,* 84 F.3d at 567); *accord Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999).

Although jurisdictional discovery was conducted, there is some dispute as to the extent of such discovery. Plaintiff argues that the appropriate standard to apply to the motion to dismiss is the standard used where discovery has not yet been conducted. According to plaintiff, the Lavin defendants objected to interrogatories as to "how each individual defendant personally participated in, benefited [sic] from or formulated, directed, controlled, adopted or ratified the alleged collection efforts, policies or practices." Pl.Opp. at 1. Defendants, in turn, counter that jurisdictional discovery has been conducted, affidavits have been submitted in support of the motion to dismiss, and that plaintiff's failure to move to compel answers to outstanding interrogatories does not excuse plaintiff from proving the existence of jurisdiction by a preponderance of the evidence.

The Court agrees that because some discovery has been conducted, plaintiff is required to allege specific facts, which, if credited, would establish jurisdiction over the Levin defendants. Because Court concludes that the facts alleged by plaintiff do not establish personal jurisdiction over the Lavin defendants under the Connecticut long-arm statute, the Court does not reach the issue of whether exercise of jurisdiction over the individual defendants would comport with constitutional due process.

The Connecticut long-arm statute, Conn. Gen.Stat. § 52–59b, provides in part that:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state . . .; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53–451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

According to plaintiff, jurisdiction is proper under subsection (2) of the Connecticut long-arm statute because the individual defendants' "direct or indirect participation and approval of collection activity aimed at Connecticut residents constitutes tortious acts within Connecticut." Pl.Opp. at 7. Plaintiff does not claim jurisdiction on the grounds that the individual defendants do business in Connecticut (under either subsection (1) or (2)). *Id.* In response, the individual defendants argue that because *Arrow* sent the collection letter(s) at issue to plaintiff in Connecticut, and there is no claim that the individual defendants personally sent the communication(s) at issue, there is no basis for concluding that the individual defendants committed any tortious acts within Connecticut.

It is undisputed that all three Lavin defendants are citizens of Illinois, were served with process in Illinois, do not own property in Connecticut, have not personally had con-

tact with plaintiff or any other debtor located in Connecticut, have not personally handled any accounts of Connecticut debtors, and have not negotiated or entered into contracts in Connecticut on behalf of Arrow. Further, while all three defendants admit that "in connection with [their] general approval or ratification of collection letters used by Arrow, [they were] aware that such letters, or some of them, might be sent to debtors residing in the state of Connecticut," it is undisputed that they played no *specific* role in Arrow's efforts to collect debts due from the plaintiff or any other Connecticut resident. Lavin Affs. at ¶ 14.[2]

Initially, the individual defendants contend that jurisdiction is improper because the alleged FDCPA violations are not "tortious conduct within the state." In response, plaintiff claims, without citation to any Connecticut case law, that a "violation of the FDCPA by a letter sent to Connecticut is a tort in Connecticut."

■ For purposes of the long-arm statute, an out-of-state defendant's tortious mailing of letters to a plaintiff in Connecticut may constitute tortious conduct within the state. *See Knipple v. Viking Communications, Ltd.,* 236 Conn. 602, 610, 674 A.2d 426 (1996) ("False representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under § 33–411(c)(4)."); *Metropolitan Entertainment Co. v. Koplik,* 20 F.Supp.2d 354 (D.Conn.1998) (daily telephone calls over a seven-year period to plaintiff in Connecticut are commission of acts within Connecticut for purposes of long-arm

jurisdiction); *David v. Weitzman,* 677 F.Supp. 95, 96–97 (D.Conn.1987) (false representations by mail and telephone to Connecticut plaintiff sufficient to establish long-arm jurisdiction because acts were committed within Connecticut).

The next issue is whether violating the FDCPA should be considered "tortious conduct." [3] In *Vlasak v. Rapid Collection Systems, Inc.,* 962 F.Supp. 1096, 1100 (N.D.Ill. 1997), the court considered this issue under an identical long-arm statute, and held that sending collection letters, the alleged FDCPA violation in that case, was "clearly . . . a 'tortious act' as defined by the [Illinois] long-arm statute." Noting that the phrase "tortious acts" is given a broad construction, the court held that a violation of the FDCPA was tortious because Illinois law defined a tortious act for purposes of the long-arm statute to encompass " 'any act that constitutes a breach of a duty to another imposed by law.' " *Id.* (citation omitted). *See also Russey v. Rankin,* 837 F.Supp. 1103, 1104–05 (D.N.M.1993) (sending of debt collection letter into state permitted exercise of jurisdiction over out-of-state defendant under either "transaction of business within this state" or "commission of tortious act within this state" prongs of state long-arm statute); *Lachman v. Bank of Louisiana,* 510 F.Supp. 753, 758 (N.D.Ohio 1981) (state interest in extending personal jurisdiction, "particularly in regard to tort claims," supports extension of jurisdiction over non-resident defendant in FDCPA case); *Sluys v. Hand,* 831 F.Supp. 321, 324 (S.D.N.Y.1993) (alleged FDCPA violation of sending debt collection letters into

---

**2.** Ronald Lavin has also submitted a supplemental affidavit stating that he retired from active management of Arrow on November 1, 1996, and that after that date he was "not involved in setting Arrow policy or procedures, including its policies or procedures with respect to collection of debts from Connecticut residents." Supp.Aff. ¶¶ 4–5. In response, plaintiff points to assignment documents signed by Ronald Lavin to support the claim that Ronald Lavin had sufficient contacts on which to base Connecticut jurisdiction. However, those documents are undated and do not rebut defendant Ronald Lavin's claim to have had no involvement with active management during the time period at issue here.

**3.** Plaintiff cites *Kobs v. Arrow Service Bureau, Inc.,* 134 F.3d 893, 898 (7th Cir.1998); *Tolentino*

*v. Friedman,* 46 F.3d 645, 652 (7th Cir.1995); and *Sibley v. Fulton DeKalb Collection Serv.,* 677 F.2d 830, 834 (11th Cir.1982) for the proposition that circuit courts have routinely held that violations of the FDCPA are tortious conduct. None of these cases stand for that proposition. *Kobs* and *Sibley* held that statutory damages under the FDCPA must be determined by a jury because the rights protected by the FDCPA most closely resemble tort actions for collection violations, which were traditionally viewed as matters of law not equity. *Tolentino* is even less relevant: that case concerned whether a letter sent by an attorney debt-collector after litigation commenced was covered by the FDCPA and the appropriateness of the district court's award of attorneys fees.

New York was within scope of New York long-arm statute). There is no Connecticut case law directly on point, however.

Assuming without deciding that an alleged FDCPA violation based on mailing a debt collection letter into Connecticut can support long-arm jurisdiction over an out-of-state defendant under § 52b–59(a)(2), plaintiff's extensive discussion of whether *Arrow's* mailing the debt collection letter constitutes tortious conduct conflates the question whether jurisdiction is proper over the corporate defendant Arrow (which is undisputed) with whether jurisdiction over the individual Lavin defendants is proper.[4] Critical for purposes of this motion to dismiss is the absence of any allegation of specific facts showing that the *individual* Lavin defendants have committed any tortious conduct within the state.

█ Courts in this district have held that personal jurisdiction over a director or officer must be based on conduct apart from acts in the director or officer's official capacity. *See, e.g., Adams v. Wex,* 56 F.Supp.2d 227, 230 (D.Conn.1999) ("personal jurisdiction may not be asserted over the president of a corporation [individually] based on the president's transaction of business in Connecticut where the president did not transact any business other than through the corporation"); *General Signal Corp. v. Donallco Inc.,* 649 F.2d 169, 171 (2d Cir.1981) (per curiam) (affirming district court's ruling that there was no jurisdiction under Connecticut long-arm statute over corporate president for tortious acts committed by the corporation); *Advanced Claims Service v. Franco Enterprises,* 2000 WL 1683416, *2 (Conn.Sup. Oct. 13, 2000) ("the general rule is that there is no personal jurisdiction over nonresident officers of a corporation where their contact with the state was only in their capacity as a corporate officer"); *Corporation for Independent Living v. Charter Oak Assoc.,* 1992 WL 79838, *4 (Conn.Sup. Apr. 10, 1992) (to establish long-arm jurisdiction over corporate officer, plaintiff must prove "that the non-resident transacted business in Connecticut

in an *individual* capacity and not merely on behalf of a corporate employer" unless plaintiff proves that the corporate veil ought to be pierced to reach the individual) (emphasis in original); *see also Karabu Corp. v. Gitner,* 16 F.Supp.2d 319, 325 (S.D.N.Y.1998) ("Suing the out-of-state officers of a large, multinational corporation based only upon their title, and absent any good faith basis for believing that they personally participated in the conduct underlying plaintiff's lawsuit, will not confer jurisdiction under a theory of agency.").

Courts in other jurisdictions have reached differing results as to whether as a matter of *constitutional* due process a state may exercise jurisdiction over a non-resident individual officer or director for FDCPA violations committed by the company. *Compare Ernst v. Riddle, P.C.,* 964 F.Supp. 213, 217 (M.D.La.1997) (debt collection letter sent by corporation "cannot form the basis for specific jurisdiction over" the individual director of corporation), *with Brink v. First Credit Resources,* 57 F.Supp.2d 848, 859–62 (D.Ariz. 1999) (jurisdiction over individual officers must be assessed on each defendant's contacts with the forum state; where individual officers drafted and participated in sending debt collection letters to forum state, that conduct could form basis for exercise of jurisdiction); *Brujis v. Shaw,* 876 F.Supp. 975, 980 (N.D.Ill.1995) (exercise of jurisdiction over non-resident corporate officers was proper where defendants' contacts with forum state were made in representative capacity but defendants "were senior corporate officers in a position to decide whether those contacts should be made at all … [and defendants] made a conscious decision to conduct business in [forum state] through allegedly deceptive practices").

However, the Court's research reveals no cases holding that exercise of jurisdiction over a corporate officer for acts done solely within his official capacity is proper under a statute similar to Connecticut's long-arm statute, which has a narrower scope than constitutional due process. *See Thomason v.*

---

4. A second, and equally fundamental, conflation of the issue whether individual directors or officers of a corporation can be held liable under the

FDCPA and whether personal jurisdiction over non-resident officers exists also occurs in plaintiff's brief.

*Chemical Bank,* 661 A.2d 595, 600–01 (Conn. 1995). Here, there are no alleged acts by the Lavin defendants apart from their acts as employees of Arrow, and there is no claim of any outstanding discovery as to acts taken by these defendants in their individual capacities. Moreover, even if acts taken solely in their capacity as employees *could* form the basis for jurisdiction under Connecticut's long-arm statute, there is no allegation here that the Lavins personally participated in mailing the letters to Connecticut. No acts by the individual Lavin defendants apart from allegedly ratifying, approving and benefitting generally from the collection practices at issue have been identified. Although mailing an improper debt-collection letter to Connecticut state may be a tortious act within the state, to hold that a defendant who approved a corporate policy in Illinois that eventually resulted in the corporation's mailing of a letter to Connecticut committed a tortious act *within Connecticut* would stretch the concept of personal jurisdiction too far. Accordingly, the individual Lavin defendants' motion to dismiss for lack of personal jurisdiction is granted.

## II. Plaintiff's motion for class certification

■ A party seeking class certification bears the burden of demonstrating that the class satisfies the prerequisites of Fed. R.Civ.P. 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed.R.Civ.P. 23(a); *Marisol A. v. Giuliani,* 126 F.3d 372, 375 (2d Cir.1997). Furthermore, the party seeking certification must qualify under one of three criteria set forth in Rule 23(b). *See Comer v. Cisneros,* 37 F.3d 775, 796 (2d Cir.1994).

Here, plaintiff seeks to certify his classes under all three prongs of Rule 23(b). Defendant, in turn, contends that the Rule 23(a) requirements of numerosity and commonality are not met, and that Rule 23(b)(3)'s requirements that common issues predominate and that the class be a superior means of resolving the dispute have not been established. Further, defendant argues that defendant lacks standing to represent the second class, and that the Court should decline to exercise

pendent jurisdiction over plaintiff's proposed CUTPA class. Finally, defendant asserts that the definitions of all three classes are fatally vague. Because the Court agrees with defendant that plaintiff has not shown that the numerosity and commonality requirements are met, plaintiff's motion for class certification is denied.

### A. *Numerosity*

■ Rule 23(a) requires a finding that the numerosity of injured persons makes joinder of all class members "impracticable." *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993). Impracticable does not mean impossible, but simply difficult or inconvenient. *See id.; Primavera Familienstiftung v. Askin,* 178 F.R.D. 405, 409 (S.D.N.Y.1998). Several factors are relevant to this determination: judicial economy arising from the avoidance of multiple actions, geographic dispersion of the putative class members, the financial resources and ability of the class to institute individual suits, and the possibility that injunctive relief could lead to inconsistent results absent class certification. *See Robidoux,* 987 F.2d at 936.

■ Generally, courts will find a class sufficiently numerous when it comprises forty or more members. *Id.* at 936; *Ansari v. New York Univ.,* 179 F.R.D. 112, 114 (S.D.N.Y.1998). In assessing numerosity, a court may make "common sense assumptions," and a plaintiff need not provide a "precise quantification of the class." *Pecere v. Empire Blue Cross and Blue Shield,* 194 F.R.D. 66, 69 (E.D.N.Y.2000) (citing *LeGrand v. New York City Transit Auth.,* No. 95–CV–0333, 1999 WL 342286, *3 (E.D.N.Y. May 26, 1999)). Nevertheless, bare assertions of numerosity are insufficient, and a plaintiff seeking class certification must reasonably estimate or provide some evidence of the number of class members to support the conclusion that the class is too numerous to make joinder practicable. *See In re Colonial Partnership Litig.,* 1993 WL 306526, *16 (D.Conn. Feb. 10, 1993) ("In light of the mere assertion that there are 40 putative class members and the absence of other argument as to why the class is so numerous as to make joinder impracticable the court can-

not find that the plaintiffs have met the requirements of Rule 23(a)(1)."); *Deflumer v. Overton,* 176 F.R.D. 55, 58–59 (N.D.N.Y. 1997) (denying motion for certification in FDCPA case where "plaintiffs have failed to proffer sufficient evidence to permit a reasonable estimate of the number of persons who fall within the proposed class" and relied solely on "a naked assertion that the number of plaintiffs are too numerous with no factual support, such as the number of customers the defendants sent similar letters to, or even the number of customers serviced by the defendants' debt collection agency"); *see also Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir.1968) (disapproving of maintenance of class action where assertions of numerosity and impracticability are "pure speculation").

▇ In his motion for class certification, plaintiff claims without any evidentiary support that there are "at least forty" members in the first class and "substantially more than that in the Second and Third classes." Doc. # 11, at 2. In response, defendant asserts that documents produced in discovery show that there are only six members of the first class. Plaintiff has amended the first class to delete the requirement that Arrow forwarded the consumer's account to Connecticut counsel for collection, and now claims, again without evidentiary support, that with this amendment, there are over forty members of the class.[5]

As evidence of the size of the class, plaintiff asserts that because Arrow has purchased "charged-off debt portfolios [at pennies on the dollar] in the face amount of over $1 billion in each of 1999 and 2000," and "bought very old debts from Fleet and Citicorp (and is still doing so) ... there can be no doubt that discovery will show that more than forty people paid on time-barred charged off debts." Pl. Reply Br. at 2. However, plaintiff gives no statistics as to the *number* of Fleet and Citicorp debts purchased, or the percentage of the $1 billion in face amount of debt belonging to Connecticut

residents. In addition, the number of Connecticut residents who *paid* on time-barred charged off debts—absent an allegation that they did so on account of the alleged FDCPA violation—has no bearing on the classes plaintiff seeks to certify here.

▇ Accordingly, plaintiff's speculative assertion that there are over forty members in each of the classes, without any basis from which to estimate how many consumer debtors in Connecticut received correspondence containing misleading information from Arrow regarding their time-barred debt, or even any evidence of the number of consumer debtors in Connecticut whose charged-off debt was purchased by Arrow, does not satisfy Rule 23's requirement that a plaintiff seeking class certification provide "a reasonable estimate of the number of persons contained in the proposed class." *Deflumer,* 176 F.R.D. at 59.

### B. *Commonality*

▇ The commonality requirement is met if the putative class members' claims share a common question of law or of fact. *See Marisol A.,* 126 F.3d at 376. "Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that all questions of law or fact raised be common." *Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 352 (E.D.N.Y. 1997) (internal citations omitted). Although the claims of individual class members do not have to match precisely, the critical inquiry is whether the common questions are at the core of the cause of action alleged. *Halford v. Goodyear Tire & Rubber Co.,* 161 F.R.D. 13, 18 (W.D.N.Y.1995). Where the question of law involves "standardized conduct of the defendant ... [to the plaintiff], a common nucleus of operative fact is typically presented and the commonality requirement ... is usually met." *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill.1984).

---

5.  Plaintiff has also suggested that the Court certify the class provisionally and require additional discovery as to numerosity, and has offered to join the additional plaintiffs in the event that discovery reveals there are fewer than forty class members in the first class. This suggestion,

however, misconceives the nature of the burden on a plaintiff moving for class certification: plaintiff must show that the requirements of Rule 23 have been met before the class can be certified. *See* Fed.R.Civ.P. 23(a); *Marisol A. v. Giuliani,* 126 F.3d 372, 375 (2d Cir.1997).

Plaintiff's proposed class numbers 1 and 3 are defined primarily in terms of liability, without any reference to common facts. However, because plaintiff has failed to identify any of the facts forming the basis for the claim of liability, the Court cannot determine whether there is a common question of law or fact, and accordingly cannot find that plaintiff has shown that the commonality requirement is met.

The Second Circuit recently considered whether the requirements of commonality and typicality can be met by conceptualizing the lead plaintiff's claims at such a high degree of generality. *See Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir.1997) (per curiam). In that case, the district court certified a class of children who were the legal responsibility of New York's child welfare system although the individual named plaintiffs all asserted violations of different statutory provisions. The district court "identified as a common question of law 'whether each child has a legal entitlement to the services of which that child is being deprived.' It identified as a common question of fact 'whether defendants systematically have failed to provide these legally mandated services.'" *Id.* at 377. Although noting that "the district court's generalized characterization of the claims raised by the plaintiffs stretches the notions of commonality and typicality," the Second Circuit concluded that because the "plaintiffs allege that their injuries derive from a unitary course of conduct by a single system," and the "statutory provisions invoked by the plaintiffs are properly understood as creating a single scheme for the delivery of child welfare services and as setting standards of conduct for those charged with providing such services—standards that the defendants are alleged to have violated in a manner common to the plaintiff class by failing to operate and maintain a functioning child welfare system," the class certification was not an abuse of discretion. 126 F.3d at 378.

In cases where FDCPA plaintiffs have received common debt collection letters from the defendants that form the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class.

*See Macarz v. Transworld*, 193 F.R.D. 46, 49 (D.Conn.2000) (certifying class where all members received common debt collection letter); *Savino*, 173 F.R.D. at 352; *Avila v. Van Ru Credit Corp.*, 1995 WL 41425, at *11 (certifying class where all members received at least one letter in common). Although plaintiff asserts that the defendant engaged in a common practice—misrepresentation by omission of information—with respect to all class members, he does not claim that common letters were sent to the proposed class members.

On a motion for class certification, the Court must accept as true the plaintiff's allegations concerning the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999). Assessing the appropriateness of class certification, however, "may involve some considerations related to the factual and legal issues that comprise the plaintiff's cause of action." 168 F.R.D. 451, 454 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). A brief review of the relevant case law suggests that mere failure to advise debtors about the statute of limitations or the consequences of paying a debt where the statute of limitations has run is not itself a FDCPA violation.

Where debt collectors have not threatened collection action, courts have not found FDCPA violations based solely on the mailing of a collection letter that does not affirmatively disclose that a debt is time barred or the consequences of making payment or acknowledging the debt, *see Wallace v. Capital One Bank*, 2001 WL 357301, § 2 (D.Md. April 6, 2001), and other courts have found that absent a threat of litigation or other remedy that the debt collector could not legally pursue, there was no FDCPA violation in attempting to collect on a time-barred debt, *see Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 2001 WL 428233 (8th Cir.2001); *Johnson v. Capital One Bank*, 2000 WL 1279661, § 2 (W.D.Tex. May 19, 2000) (collection letter for time-barred debt that stated that " 'If you choose not to respond to this notification, we will

assign your account to a collector with instructions to liquidate the balance.' " not violative of FDCPA; the letter was not misleading because "there was no mention of legal remedies or any remedy that the creditor may not legally pursue"). In contrast, some courts have found FDCPA violations where a debt collector threatened to sue on a debt it knew was time barred by the statute of limitations, *see Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1488–90 (M.D.Ala. 1987), incorrectly advised a debtor that the statute of limitations only has to do with the length of time that a debt can be reported on a debtor's credit report, *see Aronson v. Commercial Financial Servs., Inc.*, 1997 WL 1038818, § 4 (W.D.Pa. Dec. 22, 1997), or threatened further collection activity on a time-barred debt in an attempt to collect on that debt, *see Stepney v. Outsourcing Solutions, Inc.*, 1997 WL 722972, § 5 (N.D.Ill. Nov. 13, 1997). Accordingly, liability necessarily turns on particularized issues as to what representations were made by defendant to each class member.

Here, unlike *Marisol A.*, plaintiff's allegations are insufficiently specific to permit the conclusion that defendant acted with a single, unitary course of conduct to meet the commonality requirement. Although plaintiff alleges that defendant had a "policy and practice" of purchasing charged-off debts and intentionally deceiving consumers into making payment on such debts by not disclosing information about the effects of making payment on a time-barred debt, plaintiff does not describe the means by which such a practice was carried out. If plaintiff can show that a common or similar letter was sent to each class member, or another similar single course of conduct, then commonality might be established. If, in contrast, the various proposed class members received different communications from defendant regarding their time-barred debt, the individualized assessment required to determine liability under the FDCPA would counsel against certifying either class one or three.

▮ The Court also notes that the proposed second class (Connecticut residents whose debt was purchased by Arrow, was more than seven years old and was reported

to on the consumer's credit report) is problematic for another reason. Plaintiff's amended complaint does not allege that defendant reported *his* debt on his credit report, although the complaint does state that Arrow had a practice and policy of reporting such information. *See* Amended Compl. § 19. Defendant also points to deposition testimony by plaintiff stating that he does not, to his knowledge, "claim that Arrow reported any information about [him] to a consumer credit reporting bureau." *See* Reese Depo. at 43. Therefore, according to defendant, plaintiff lacks standing to assert this claim on behalf of the putative class. Although plaintiff's brief now characterizes his deposition testimony as stating that "he was *currently* unaware of any credit report being made on him," Pl. Reply Br. at 4 (emphasis in original), his deposition testimony was not limited to currently reported debt, and no affidavit or declaration from plaintiff stating that his debt was indeed reported to a credit bureau has been submitted. Plaintiff also claims that testimony of Brian Cutler, Arrow's part owner and officer, establishes that "as of a few months before this lawsuit Arrow was reporting to credit bureaus on all purchased debts." However, if plaintiff does not claim that his debt was actually reported, he lacks standing to challenge the reporting of time-barred debt, and cannot act as a representative of any class challenging this alleged action by Arrow.

### C. *Summary*

Accepting plaintiff's allegations as true, there simply is not sufficient detail alleged here to permit the Court to determine whether either the numerosity and commonality requirements of Fed.R.Civ.P. 23(a) are met in this case. Accordingly, plaintiff's motion for class certification is denied without prejudice to renew after liability has been determined, if plaintiff can show that his proposed classes meet Rule 23's requirements of numerosity and commonality.

### III. Conclusion

For the reasons discussed above, defendants' motion to dismiss [Doc. # 23] is

GRANTED and plaintiff's motion for class certification [Doc. # 11] is DENIED.

IT IS SO ORDERED.